## SHORT et al. v. HEPBURN.

### (Circuit Court of Appeals, Fifth Circuit. June 15, 1896.)

#### No. 491.

1. CIRCUIT COURT—JURISDICTION—SUIT BY RECEIVER OF NATIONAL BANK.
   The United States circuit court has jurisdiction of a suit brought by the statutory receiver of a national bank, without reference to the citizenship of the parties.

2. STATE AND FEDERAL COURTS—ACTION PENDING.
   The pendency of a suit in a state court is not necessarily a bar to a suit in a federal court between the same parties, involving the same issues.

3. SHERIFFS—SALE OF LAND OUTSIDE COUNTY.
   A sheriff in Texas has no power to levy upon or sell land lying outside his county; and his deed, describing by metes and bounds land purporting to have been levied on and sold, part of which lies outside his county, is void as to such part.

4. FRAUDULENT CONVEYANCES—FICTITIOUS PERSON.
   In an action involving the validity of a title claimed by defendant to have been acquired under attachment and execution against one C., while plaintiff charges that C. was a fictitious person, and the deed to him and the proceedings against him were parts of a scheme of his supposed grantor to defraud his creditors, it is error to charge the jury either that, if C.'s whereabouts were unknown, it would make his title to the property immaterial, or that the fact that C. was a fictitious person would entitle the plaintiff to recover, irrespective of the circumstances under which defendant acquired his title.

5. SAME—RECORD TITLE.
   Where both parties to an action claim title to land under legal proceedings, those through which defendant derives title being alleged to be fraudulent, it is reversible error to instruct the jury that, upon the record evidence, the title is vested in the plaintiff, whereas in fact the defendant has the better title, unless it is defeated by fraud.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

M. L. Morris and W. M. Crow, for plaintiffs in error.
W. S. Simpkins, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and SPEER, District Judge.

PARDEE, Circuit Judge. The first assignment of error complains of rulings on a plea to the jurisdiction of the court and on a plea of lis pendens. The suit was instituted by the statutory receiver of the Merchants' National Bank of Dallas, and the circuit court had jurisdiction to entertain the suit, without reference to the citizenship of the parties. Price v. Abbott, 17 Fed. 506; Stephens v. Bernays, 41 Fed. 401; Gibson v. Peters, 150 U. S. 342, 14 Sup. Ct. 134. The pendency of a suit in a state court is not necessarily a bar to a suit in the United States court between the same parties, involving the same issues. Stanton v. Embrey, 93 U. S. 548; Gordon v. Gilfoil, 99 U. S. 168.

The second, third, and fourth assignments of error charge the erroneous admission of evidence showing a levy on the individual property of a partner under a judgment and execution against the

firm. A question similar was before this court in the case of Fleischman v. Bowser, 23 U. S. App. 494, 10 C. C. A. 370, and 62 Fed. 259; and the ruling in that case, adverse to the contention, disposes of these three assignments of error.

The next eleven assignments (the fifth to the fifteenth, inclusive) charge error in the admission of evidence as to the doings and transactions of James B. Simpson, which evidence tended to show that the deed executed July 21, 1891, conveying the land in controversy to Kenneth Cayce, was simulated and fraudulent, and that the said Kenneth Cayce, the grantee in said deed, and through whom plaintiff in error derived title, was a nonexisting, fictitious person, incapable of contracting, or of suing and being sued. The doors appear to have been opened very wide on these issues, and the trial court went to the very verge, if not beyond, in admitting evidence offered. As, however, the issues involved were somewhat novel, and the resulting questions of law far-reaching, there was no reversible error in the rulings complained of.

The main objection to the admission of the evidence was to the effect that as Simpson had conveyed to Cayce, and Kelly in good faith had acquired Cayce's title, proof of the transactions of Simpson subsequent to his conveyance was immaterial and irrelevant, not affecting Kelly. This objection wholly overlooks the issues as to the good faith of Simpson, and the existence of Cayce, as well as the direct issue tendered, that Kelly himself was a tool and confederate of Simpson in the matter of putting his property beyond the reach of creditors.

The sixteenth assignment of error is to the effect that the court erred in admitting, over the objections of plaintiff in error, certain copies of the following recorded instruments: Powers of attorney from Kenneth Cayce to M. L. Robertson, dated January 28, 1892, and acknowledged the same day at Dallas, Tex., before J. B. Simpson, notary public; and a deed purporting to be executed by Kenneth Cayce, per his attorney, M. L. Robertson, to U. F. Short, conveying all the land in controversy, dated March 2, 1892, and acknowledged May 23, 1892; and a similar power of attorney from A. B. Seegar to M. L. Robertson, dated December 21, 1891, and one from Frank Olin to M. L. Robertson, dated October 30, 1891, and one from Edgar Q. Alger to M. L. Robertson, dated August 2, 1891, all acknowledged before J. D. Simpson, as notary. The objection made to the admission of the certified copies of these documents is that they were not filed as evidence, and no notice was given that they would be offered as affecting the rights of the plaintiff in error; and, besides, they are immaterial and irrelevant. These documents were not offered as a part of the title of the plaintiff, but as bearing on the issue that the deed from James B. Simpson to Kenneth Cayce was simulated and fraudulent.

The seventeenth assignment of error is that the court erred in refusing to give to the jury the general charge in favor of William Kelly, plaintiff in error. The evidence upon the real issues of the case was conflicting, and the charge requested was properly refused.

The eighteenth and twenty-eighth assignments relate to the

charge to the jury as given, and the refusal to charge as requested, in regard to the effect of an execution levied upon, and a deed of, land lying in Upshur county, Tex., by the sheriff of Camp county, Tex. The plaintiff in error requested the court to charge the jury to find for William Kelly, defendant and cross complainant, for so much of the tract of land in controversy as was situated in Upshur county. This the court refused, and charged the jury to the contrary, as follows: "That the execution sale and deed by the sheriff of Camp county, Tex., conveys all the land in controversy lying in both Camp and Upshur counties." One of the titles relied upon by the plaintiff in the court below was derived from the proceedings in the suit of the Merchants' National Bank v. Simpson, Perkins & Co., in the circuit court of Dallas county, Tex., in which an attachment was issued February 20, 1892, addressed to the sheriff of Camp county, Tex., which was by him levied on the entire tract as lying in both Camp and Upshur counties. The judgment of foreclosure in that suit describes the land attached as lying and situated in Camp county, and the order of sale purports to follow the return of the sheriff on the attachment and the judgment of foreclosure, and is addressed to the sheriff of said Camp county. The levy and sale, as shown on the return by said sheriff, are of the property as described in the order of sale, and the sheriff's deed recites a sale of land lying and situated in Camp county, but describes the land by metes and bounds as described in the attachment levy and judgment of foreclosure. In regard to the levy by attachment, Rev. St. Tex. art. 160, reads: "A writ of attachment shall issue directed to the sheriff or any constable of any county where property of the defendant may be supposed to be, commanding him to attach," etc. And article 161 reads: "Several writs of attachment may, at the option of the plaintiff, be issued at the same time or in succession, and sent to different counties." In regard to executions, article 2279 of the same Statutes reads: "Where the execution of any writ in the nature thereof requires the sale or delivery of specific real or personal property, it may be issued to the county where the property or some part thereof may be situated." And article 2303 is: "Real property taken by virtue of any execution shall be sold by public auction at the courthouse door of the county," etc. Considering these statutes, the supreme court of Texas, without contradiction, so far as we are advised, have uniformly held that a sheriff's sale of lands lying outside of his county is void. Alred v. Montague, 26 Tex. 733; Casseday v. Norris, 49 Tex. 613; Lewis v. Dennis, 54 Tex. 487; Terry v. O'Neal, 71 Tex. 594, 9 S. W. 673. Counsel for defendant in error cites, as modifying the foregoing decisions, Oppenheimer v. Reed (Tex. Civ. App.) 32 S. W. 326; Smith v. Perkins, 81 Tex. 157, 16 S. W. 805; Williams v. Haynes, 77 Tex. 283, 13 S. W. 1029. An examination of these cases shows that they are inapplicable, and do not affect the proposition that a sale by a sheriff of land lying and situated outside of his bailiwick is void. It follows that the court erred in refusing the charge as requested, and in giving that part of the charge relating to land in Upshur county.

The nineteenth, twentieth, twenty-first, twenty-second, twenty-

third, and twenty-fourth assignments of error related to special requests to charge the jury in favor of William Kelly, complainant and cross complainant in the court below, each of which is objectionable, because calculated to mislead and confuse under the issues in this case. In some the law applicable is correctly stated, but not the whole law. In others the statements of fact are incomplete, and issues ignored which, if found by the jury in favor of the plaintiff, would have entitled him to recover, notwithstanding law and matter contained in the requested charge. No one of these requested charges to the jury was correct and complete in and by itself.

The twenty-fifth assignment of error is that the court erred in refusing the special charge as follows:

"If you find and believe from the evidence that Wm. Kelly in good faith acquired a bona fide debt against Kenneth Cayce, believing such a man existed, and you further find and believe from the evidence that no such a man exists, or his whereabouts are unknown, and if you find that Wm. Kelly found the land in controversy in the name of Kenneth Cayce, and sued on said debt, and attached said land as the property of said Cayce, and, through judgment of foreclosure, execution sale, and sheriff's deed, acquired title thereto, then I charge you to find for Wm. Kelly the land in controversy."

The record shows that, while the above charge requested was refused, the court charged the jury on the same subject as follows:

"The evidence shows the attachment under which plaintiff claims was levied February 22d, 1892, and that under which Wm. Kelly claims March 4th, 1892. Wm. Kelly claims that he in good faith contracted his debt; but the only question for you to determine is, was the conveyance of Jas. B. Simpson to Kenneth Cayce simulated or a contrivance to defraud? * * * If you believe from the evidence that Jas. B. Simpson, in good faith and for a valuable consideration, conveyed the land in controversy to Kenneth Cayce, and the deed was executed and delivered, and said Cayce acted in good faith, even though said Simpson may have intended to defraud, this cannot affect Cayce, and your verdict should be for defendants."

The charge as requested was incorrect, as it declares that, although such a man as Kenneth Cayce existed, if his whereabouts were unknown his title to the land in controversy was wholly immaterial. The charge as given substantially instructed the jury that, if the conveyance of James B. Simpson to Kenneth Cayce was simulated or a contrivance to defraud, the plaintiff must recover; and this irrespective of circumstances under which William Kelly acquired his title, through process of attachment, judgment, and foreclosure against Cayce, who held the title under conveyance from Simpson. The subsequent instruction that if Simpson was in good faith, and Cayce acted in good faith, even though Simpson may have intended to defraud, their verdict should be for the defendants, is conflicting with the former part of the charge above referred to, and, in connection therewith and with the further instruction that, if the jury believed Cayce did not exist, they should find for the plaintiff, rendered the whole charge on the subject misleading, and undoubtedly tended to confuse the jury.

The twenty-sixth assignment of error complains that the court charged the jury as follows: "The court charges you that title to the land is vested in plaintiff upon the record evidence in the case,

unless defeated by a further issue hereinafter submitted to you." Under the record evidence in the case, all the parties claim title through James B. Simpson, who, on July 21, 1891, executed a warranty deed in due form conveying the property in question to Kenneth Cayce. This deed was recorded on the 19th of January, 1892. March 3, 1892, William Kelly caused the lands to be attached as the property of Kenneth Cayce, and by due proceedings, in the way of judgment, foreclosure of attachment lien, and sale, acquired all the title that Kenneth Cayce had in the land. The title of plaintiff in the court below was acquired under proceedings in a certain suit wherein, at the term of the district court within and for the county of Marion, state of Texas, ending on the 21st day of January, 1892, Samuel Thurman recovered a judgment against the firm of Simpson. Perkins & Co., and L. E. Pratt, J. B. Simpson, M. Perkins, and E. A. Stewart personally, for $924.96, with interest at the rate of 8 per cent. per annum. That judgment was recorded in Camp county, Tex., February 20, 1892, and in Upshur county, Tex., February 24, 1892. Execution was issued upon said judgment June 13, 1892, and was levied on the land in controversy in Camp county on the 14th day of June, 1892. Said land was thereafter sold under said execution and levy, and acquired by the Merchants' National Bank of Dallas, whose title plaintiff in the court below asserted. It appears, also, that February 20, 1892, the Bankers' & Merchants' National Bank of Dallas commenced proceedings in attachment against the firm of Simpson, Perkins & Co., and caused attachment to be levied upon the property in controversy by the sheriff of Camp county. These proceedings, thus instituted, culminated in a judgment, foreclosure of lien, sheriff's sale, and the acquisition of the property by the Bankers' & Merchants' National Bank of Dallas. From this, it is evident that the title to the land in controversy was not vested in the plaintiff in the court below upon the record evidence, but was vested in William Kelly. The instruction given not only misinformed the jury, but necessarily threw the burden of proof upon the plaintiff in error Kelly, when, in fact, he had the better title, unless the same was defeated by fraud.

This disposes of all the assignments of error presenting questions reviewable in this court. We notice in this case, as in many others, that the bill of exceptions brings up in its minutest detail all the evidence offered in the court below; and that evidently with a view of presenting the cause to this court as on appeal, instead of by writ of error. Counsel have mainly directed their arguments to the case as one wholly within the breast of the court, and as though this court was authorized to review the evidence, and, although conflicting, actually find and determine that James B. Simpson was guilty of fraud, that Kenneth Cayce was a fictitious, nonexistent person, and that Kelly and Short, the defendants in the court below, and many others, more or less reputable citizens of Dallas, not parties to the suit, were all mixed up in the fraudulent transactions of James B. Simpson. For this reason, we give this opinion without an attempted statement of facts in the case, and carefully refrain throughout from reciting any one fact as proved

beyond the agreed fact that James B. Simpson was the common source of title. The judgment of the circuit court is reversed, and the cause is remanded, with instructions to award a new trial.