## WEAVER v. KELLY.

### (Circuit Court of Appeals, Fifth Circuit. February 21, 1899.)

### No. 754.

1. JURISDICTION OF FEDERAL COURTS — ACTION BY RECEIVER OF NATIONAL BANK—TRANSFER OF PLAINTIFF'S INTEREST.

When the jurisdiction of a federal court in an action by the receiver of a national bank depends solely on the official character of the plaintiff as such receiver, such jurisdiction is lost by a sale and transfer by the plaintiff of all his interest in the subject-matter of the litigation.

2. DISMISSAL—WANT OF ACTUAL CONTROVERSY—PURCHASE OF PLAINTIFF'S INTEREST BY A DEFENDANT.

A receiver of a national bank brought an action in a federal court to recover land against defendants, each of whom claimed a separate interest in the land. The defendants made a compromise of their claims between themselves, and entered into a written contract by which they agreed to consolidate their interests, join in the defense of the suit, and, if successful, to divide whatever land was recovered on a basis therein fixed. Afterwards one of them purchased the interest of the plaintiff in the land, and immediately conveyed the same to a third person, who claimed to hold it adversely to the other defendants. *Held* that, on such facts being shown, the court should have refused to permit the suit to continue for the benefit of one of the original defendants, or of his grantee pendente lite, who stood on no better ground, against his co-defendants.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

W. B. Gano, for plaintiff in error.

M. L. Morris, W. M. Crow, and W. F. Armistead, for defendant in error.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

McCORMICK, Circuit Judge. This case was before us on a writ of error at the November, 1895, term of this court. Our decision (Short v. Hepburn) is reported in 41 U. S. App. 520, 21 C. C. A. 252, and 75 Fed. 113. James B. Simpson had acquired the land in controversy December 9, 1889, and owned and held it until July 21, 1891. His title thereto at that time is not disputed. Under him both the plaintiff and the defendants claimed as the common source of title. By a deed dated July 21, 1891, he purported to convey the land to Kennett Cayce. This deed was not filed for record in the proper county until January 19, 1892. Between July 21, 1891, and January 31, 1892, Simpson, as grantor, individually and as owner of the lands, by deeds duly executed and recorded, conveyed portions of the land in controversy to Farber, Morris, Reynolds, Hopkins, Hereford, and numerous other parties. Simpson was indebted to the Bankers' & Merchants' National Bank of Dallas. On February 20, 1892, it brought an action against him on its debt, and procured to be issued an attachment, which on February 22, 1892, was levied on the land in controversy as the property of Simpson. Before that time, on

January 14, 1892, one Sam Thurman had obtained a judgment against Simpson, and an abstract of the same was recorded and indexed in Camp county, Tex., on February 20, 1892, on which judgment execution issued and was levied upon the land in controversy as the property of Simpson, under which execution the land was duly sold and conveyed to 'the Bankers' & Merchants' National Bank of Dallas, July 5, 1892. In its action against Simpson, the bank obtained judgment, with a foreclosure of its attachment lien on the land in controversy, and under due process the land was sold and conveyed to the bank by the sheriff of Camp county, by deed dated February 6, 1894. On August 15, 1890, William Kelly, dealing with Simpson, who claimed to be acting as agent of Kennett Cayce, conveyed to Cayce certain lands, subject to a vendor's lien, for which Kelly was bound, and which, as stipulated in the deed, Cayce was to pay, which transaction resulted ultimately so that Kelly had a claim of debt against Cayce. On this debt Kelly brought suit, March 3, 1892, against Cayce and Simpson, and procured attachments to issue, which were on March 4, 1892, levied on the land involved in this suit as the property of Cayce, and also as the property of Simpson, to the extent of his interest or equity therein. Before the trial, Kelly's suit was dismissed, without prejudice, as to Simpson, and thereafter, October 10, 1893, judgment was taken, with a foreclosure of the attachment lien, against Cayce, on which judgment process was duly issued and executed against the land, which was sold by the proper officer, and conveyed by him to William Kelly as the purchaser, by deed dated January 2, 1894. By a deed bearing date March 2, 1892, M. L. Robertson, a son-in-law of Simpson, acting under a writing purporting to be a power of attorney from Cayce, conveyed all the land in controversy to U. F. Short. This deed, though bearing date March 2d, was not acknowledged until May 25th, and was filed for record in Camp county on the 27th of May, 1892. Kelly, having learned that Short set up a claim to the land in controversy, derived through purchase from Cayce, and in conflict with the title acquired under Kelly's attachment and sheriff's deed, went to work (before the filing of this suit) to compromise with Short their conflicting claims, and thereby save the expense of litigating issues between them, and leave to be contested only the issue of title as between Kelly and Short, on the one side, and H. S. Hepburn, receiver of the bank, on the other. After the matter of compromise had been considered and agreed on between Kelly and Short, the latter made it known that he had conveyed his title and interest in and to a part of the land to William D. Simpson, Jr., a son of James B. Simpson; and thereupon the compromise and agreement was reduced to writing as it had been made, except that a large interest in the land which was to have gone to Short was, by the written agreement, to go to William D. Simpson, Jr.; and these three, Kelly, Short, and William D. Simpson, Jr., contracted in writing, in triplicate form, of date April 5, 1894, duly signed and executed by each of the parties, each taking a copy thereof. The agreement is in the following words:

"This agreement, entered into between William Kelly, U. F. Short, and Wm. D. Simpson, Jr., witnesseth that whereas, said parties are jointly inter-

ested in a certain tract of land, as hereinafter described, and in the propor-
tion as hereinafter stated; and whereas, a suit is now pending in the district
court, Camp county, Texas, for part of said tract of land, and it may be
necessary to bring or defend other suits in reference to said lands, as described
as follows: A tract of land situated in the counties of Camp and Upshur,
Texas, known as the 'Dickson Lands,' containing 7,630 8/10 acres, as fully
described in a deed of Amanda Dickson and others to Jas. B. Simpson, dated
19 and 21 days of December, 1889, and recorded in Vol. G. pages 247, 248,
249, and 250 of the records of deeds of Camp county, Texas, to which refer-
ence is here made for a full and complete description of said tract of land.
Therefore it is agreed, by and between the parties hereto, that we will make
common cause, and work in each other's interest, in prosecuting and defend-
ing suits in reference to said land; and if successful, and said property is
awarded to either of the parties hereto, then Wm. Kelly shall first have 2,000
acres, undivided, of said land; and, if over 2,000 acres is recovered, then U.
F. Short shall have 200 acres, undivided, of said land; and after Wm. Kelly
has received his 2,000 acres, and U. F. Short his 200 acres, all the balance of
said land, supposed now to amount to about 3,000 acres, shall belong to, and
be the property of, Wm. D. Simpson, Jr., and an equitable partition and
division of same shall be made between all the parties hereto in the proportions
hereinbefore stated. It is further agreed that, in all litigation in reference
to said land, each party hereto shall furnish his attorney, at his own expense,
but the court costs shall be shared pro rata in proportion to the interest in
said land, as herein indicated; that is, for every dollar of cost U. F. Short
shall pay, Wm. Kelly shall pay ten dollars and Wm. D. Simpson, Jr., fifteen
dollars."

Before the execution and delivery of the foregoing agreement,
Hepburn, as receiver of the bank, brought suit against Kelly and
Short in the state court, in Camp county, to try the title and recover
possession of the land. He afterwards, on December 28, 1894, brought
this action in the circuit court of the United States, at Jefferson,
against the same defendants, Kelly and Short, who made common
cause in defending against the same. As appears in the report of
our former decision, supra, plaintiff obtained a judgment in the cir-
cuit court against both of the defendants, which judgment we re-
versed, and the cause was remanded to the circuit court, with instruc-
tions to award a new trial. The case again came on for trial in the
circuit court on January 29, 1898, on which date it was, on motion
of the plaintiff, ordered that the suit be dismissed as to the defend-
ant Short. On the same day the defendant Kelly moved the court to
dismiss the suit for want of authority of the receiver to further
prosecute the same. On this motion the court took time to consider,
and on January 31st (the intervening day being Sunday) the court,
being sufficiently advised, overruled Kelly's motion. The trial pro-
ceeded, and on February 4, 1898, resulted in a judgment in favor of
the defendant William Kelly, to review which this writ of error was
sued out.

On the trial U. F. Short testified, in substance, that, when our
former opinion was given out, in which we referred to "charges of
fraud against persons more or less reputable," he resolved that he
would not be mixed up in this transaction any further; that the
receiver of the bank had been ordered by the comptroller of the cur-
rency to close out these assets, and in obedience thereto the receiver
came to the witness, and asked if he could not make a sale of the law-
suit; that the witness spoke to Judge Morris (Kelly's attorney) about

it, and said to him that, if they could raise the money, they could buy the receiver's title, and thus own the land; that both Morris and witness knew that the property belonged to Simpson, and that this purchase would settle it; that witness spoke to Simpson about it, but the latter thought he could beat the receiver; that Morris thought that he could raise $1,000 on the $2,500 which they proposed to offer to effect the purchase, and that the witness could raise the balance, but neither of them were able to raise it; that, before witness knew that he and Morris could not raise the money, he made a proposition to the receiver to pay $2,500 for the bank's interest in the suit, which proposition had been submitted to the comptroller and accepted by him; that, when the witness found that Morris and he could not raise the money, he induced a Mr. Bartlett to buy the land, rather than disappoint the receiver; that the negotiation with the receiver had been conducted in the name of witness, and the deed was finally executed and delivered directly to him, and he immediately executed and delivered to Bartlett a warranty deed to the land; that Bartlett furnished the money, and witness had no interest whatever in the transaction; that the purchase was made with Bartlett's money, but that witness received $1,000 for executing the warranty deed and for his services.

M. L. Morris, attorney for Kelly, testified, in substance, that the receiver of the bank told this witness that he wished to compromise the litigation; that he wanted to wind up the bank's affairs, and asked him (Morris) to make a proposition to buy the lands in behalf of Kelly; that witness asked a day or two to consider the matter; that Judge Short afterwards came to witness' office, and told witness that the receiver wanted to sell out and close up the litigation, and desired to act at once; that Short said that he was in a better position to buy the receiver out than witness was; that the original cross bill of Kelly, setting up the agreement of April, 1894, between William Kelly, U. F. Short, and William D. Simpson, Jr., was first filed in the state court, at Pittsburg, Tex., in March, 1897, after the plaintiff, H. C. Weaver, as receiver of the bank, had conveyed the land in controversy to Short; that in his negotiations with Short, in the summer of 1896, with reference to buying out the plaintiff, he stated to Short that he represented William Kelly, and, as Kelly's attorney, he made an oral agreement with Short to buy out the plaintiff; that he and Short even went further, and decided that, after Kelly and Short bought out the plaintiff, Short and witness would then buy out Kelly, and thus own the land, but that this was not to be considered until the deal with the receiver was consummated; that Short and Kelly did not have the money to pay the receiver, but Short agreed that, when the deal was ready to be consummated, the title would be cleared up, and he (witness) and Short expected then to borrow the money ($2,500) to pay the plaintiff; that the sale was to be confirmed by the circuit court, at Dallas, in January, 1897, but on November 23, 1896, U. F. Short, or some one, without the knowledge of witness, slipped off to Waco, Tex., and had the sale to Short confirmed at a session of the circuit court then in session there, and, without the knowledge of witness, the deed of plaintiff, as receiver

of the bank, to Short, was executed December 8, 1896, and on the same day it and the deed of Short to Bartlett (both for the land in controversy) were sent to Camp county for record, and the first the witness knew of the two deeds was when he saw them in the recorder's office in Pittsburg, Tex., whither he had gone on business.

Where it had been made to appear that one party to a suit had sold out to the other, and that the suit was prosecuted by the purchasing party, for his own benefit, the supreme court, on its own motion, after notice and hearing, dismissed the case. East Tennessee R. Co. v. Southern Tel. Co., 125 U. S. 695, 8 Sup. Ct. 1391. In a later case the supreme court said:

"We cannot consent to determine a controversy in which the plaintiff has become the dominus litis on both sides. * * * The litigation has ceased to be between adverse parties, and the case, therefore, falls within the rule applied where the controversy is not a real one. If the writ of error be dismissed, the judgment will remain undisturbed, and the plaintiff in error might be cut off from submitting the questions involved for the determination of the appellate tribunal; while, if the judgment be reversed, the minority of the stockholders of the defendant in error would be deprived of the benefit of the litigation in its favor. But, although the latter might be thereby subjected to the delay and expense of further litigation, they would still be free to vindicate whatever rights they are entitled to. Without considering or passing upon the merits of the case in any respect, we deem it most consonant to justice to reverse the judgment and remand the case for further proceedings in conformity to law." South Spring Co. v. Amador Co., 145 U. S. 300, 12 Sup. Ct. 921.

Some of the earlier cases, announcing and illustrating the rule above referred to, are: Lord v. Veazie, 8 How. 251; Cleveland v. Chamberlain, 1 Black, 419; Paper Co. v. Heft, 8 Wall. 333; and Dakota Co. v. Glidden, 113 U. S. 222, 5 Sup. Ct. 428.

It is clear that the receiver of the bank has had no interest in the matter involved in this litigation since the 8th of December, 1896. Short continued to figure as a defendant in the litigation from December 8, 1896, when he acquired all of the plaintiff's title, until January 29, 1898, when the case came on for trial, and the suit, which he plainly then controlled, was dismissed as to him.

The jurisdiction of the circuit court depended wholly on the character of the original plaintiff (Short v. Hepburn, supra); and it continued to depend on the like character of his official successor, Weaver, who duly qualified as receiver, and, as such, became the party plaintiff in this litigation. By the compromise and sale of the bank's interest to Short, the control of this litigation passed fully to the defendants. The agreement between them and William D. Simpson, Jr., is one which a court of equity would enforce and charge Short as trustee for the benefit of the other parties thereto. Bartlett, if in fact he was a purchaser, and not merely a lender of the money, is charged with notice by the lis pendens, and could not take or hold a better position than Short occupied. Under the conditions which are shown to have existed, the circuit court should not have suffered the litigation to proceed for the benefit exclusively of the original defendants.

As was done in South Spring Co. v. Amador Co., supra, we deem it most consonant to justice to reverse the judgment of the circuit court,

and remand the cause, with direction to that court to dismiss the case, without awarding costs in the circuit court to either party; and it is so ordered.