FRED ROBERTSON et al., Appellees, v. C. F. HOWARD, Appellant.

No. 16,462.

FRED ROBERTSON et al., Appellees, v. FRED HOWARD, Appellant.

No. 16,463.

SYLLABUS BY THE COURT.

1. BANKRUPTCY—*Sale of Land in this State by Foreign Trustee— Jurisdiction.* The sale by a trustee in bankruptcy, under the orders of a United States district court in the state of Illinois, of a certificate of sale of state school land in Kansas conveys to the purchaser of such certificate no interest in the land in this state, none of the steps required by the laws of the United States being taken to sell, within this state, the land as such.

2. SCHOOL LAND—*Interest of Certificate Holder after Part Payment of Purchase Price.* The contract between the bankrupt and the state of Kansas, evidenced by the certificate of purchase, a part of the purchase price being paid, conveyed to the purchaser an equitable title to the land.

3. EXECUTION SALE—*Equitable Interest.* The purchaser's equitable interest in such land is real estate, and as such is subject to sale on execution. (Gen. Stat. 1868, ch. 104, § 1, subdiv. 8; Gen. Stat. 1909, § 9037, subdiv. 8; *Poole v. French,* 71 Kan. 391.)

4. BANKRUPTCY—*Title of Trustee to Bankrupt's Property— Interest of Bankrupt.* Upon an adjudication of bankruptcy and the appointment and qualification of a trustee the title and control of all the bankrupt's nonexempt property vests in the trustee, for the purpose of liquidating the debts of the bankrupt under the orders of the court. Subject to this purpose, the bankrupt retains an interest in the property, which, in case the property is not needed or is not disposed of for such purpose, and the bankrupt is discharged, recalls to the bankrupt all rights thus vested in the trustee.

5. ———— *Conveyance by Bankrupt During Pendency of Proceedings—Interest of Grantee.* If during the pendency of the bankrupt proceedings the bankrupt conveys all his interest in any such property, and thereafter is fully discharged, and any property so conveyed has not been used or disposed of, the reversionary title thereto follows such conveyance and vests in the grantee.

Appeal from Rawlins district court; WILLIAM H. PRATT, judge.   Opinion filed June 11, 1910.   Affirmed.

### STATEMENT.

CASE No. 16,462 was tried in the court below without a jury, under an agreement that all the evidence, findings and proceedings should apply equally to case No. 16,463, and the findings of fact and conclusions of law made by the court therein are as follow:

### "FINDINGS OF FACT.

"This is an action in ejectment, brought by the said plaintiffs against the defendants to recover possession of the southeast quarter of section sixteen (16) in township one (1), of range thirty-four (34), in Rawlins county, Kansas, and for the rents of the same.   At the March, 1908, term of the court a jury was duly waived by all the parties and the trial was had to the court.   At the same time the parties in this action, and also the parties in the action number 2675, pending in this court, in which the plaintiffs in this action are also plaintiffs, and Fred Howard and John Nevil are defendants, agreed in open court that whatever the judgment and decision of this court might be in this first-mentioned action, No. 2676, the same should be held and considered to be applicable to, and a determination of, the last-mentioned case, all parties waiving a jury in said action as in the first.   This action having been duly submitted to the court, the same was by the court taken under advisement until the November, 1908, term of this court.

" (1) The land involved in this suit is what is known in this state as school land, and the plaintiffs claim title thereto under the original purchaser thereof, and from assignments had from him and his grantors, and the defendant, C. F. Howard, claims title and ownership to the land by virtue of certain tax proceedings and school-land contract sale hereinafter referred to.

" (2) On the 22d day of December, 1884, a certificate of purchase was, by the county clerk of said Rawlins county, duly issued to a qualified purchaser for the sum of $480, and the purchaser at that time duly paid the one-tenth thereof, being $48, and by a succession of assignments one John H. Hagener became the owner of certificate of purchase and all rights to the land thereby

contracted for or conveyed. The said Hagener became such owner on the 28th day of October, 1901.

"(3) Some time prior to the sale of land for taxes in said county, on September 3, 1901, the provisions of chapter 162, Laws of Kansas of 1891, being paragraph 7659 of the General Statutes of the state of Kansas for 1901, were duly adopted by said county, and such law so adopted remained in full force and effect during all the years relating to the tax proceedings hereinafter mentioned.

"(4) On the 3d day of September, 1901, at a sale of lands for said county for delinquent taxes, the said land was by the county treasurer of said county of Rawlins, under and by virtue of the provisions of said chapter 162, Laws of Kansas for 1891, bid off in the name of said county for the delinquent taxes of the year 1900, for the sum of $14.80, and afterward, and on September 28, 1903, the county clerk of said county assigned the tax-sale certificate to said land to defendant C. F. Howard for the sum of $19.90.

"(5) The said sale of lands was had and held under and by virtue of a notice of such sale, in words and figures as follows: 'Delinquent Tax List. Office of county treasurer, Rawlins county, Kansas. Atwood, Kan., July 15, 1901. Notice is hereby given that taxes for the year 1900 on the following land and town lots remain due and unpaid, and so much of each lot or parcel of land as may be necessary will be sold at the county treasurer's office at public sale on the first Tuesday in September, 1901, and the next succeeding days, for the taxes, costs and penalties. F. L. Schwab, county treasurer.' Then follows a list of this and other lands.

"(6) Proof of the publication of this notice was never transmitted or deposited in the county clerk's office of said county. As a part of the costs of the assignment of said tax-sale certificate, and included therein, were the costs of sale of said land for the years of 1902 and 1903, and a redemption fee of fifty cents.

"(7) That upon these tax proceedings the county clerk of said county executed to defendant, Howard, a certificate of purchase of school land, upon the 28th day of September, 1903; afterward, and on December 18, 1903, the said clerk issued to defendant Howard a renewal certificate of purchase, in place of the former, and by virtue thereof defendant Howard entered into possession of said land and has ever since held posses-

sion thereof and received the rents thereon.  Defendant Nevil makes no claim by answer, or otherwise, in this case.  Upon these tax proceedings and certificate of school land issued by virtue thereof defendant Howard claims the right to said land.

"(8) In 1904, and prior to November 12 of said year, the said John H. Hagener was in the United States district court, southern division of the state of Illinois, and, by virtue of the judgment and order thereof, duly adjudged a bankrupt, and all of his property, including the said certificate of purchase of the land involved in this action, was placed in the hands and custody of said court as the property and assets of said bankrupt's estate, and one R. R. Hewitt was duly appointed and qualified as the trustee of said bankrupt's estate, and he duly entered upon his duties as such officer.

"(9) That on the 12th day of November, 1904, by virtue of an order made by said court so to do, a public sale, at the city of Beardstown, in the state of Illinois, was had, by the said trustee, of the assets of said bankrupt, including the said certificate of purchase, and at such sale one Henry Fraumann offered by his bid the sum of $115 for said certificate of purchase and some other property of said bankrupt, and the said bid was, by the said trustee, accepted, and the sale being afterward reported to said court, the same was approved and confirmed by said court, and by virtue thereof the said trustee, on November 30, 1904, assigned and delivered the said certificate of purchase to the said Henry Fraumann.

"(10) That afterward the said Henry Fraumann and his wife, on July 19, 1905, sold, assigned and transferred and delivered the said certificate of purchase and his right to any rents of said lands, if any he had therein, to plaintiff, Fred Robertson, and thereafter, and on the 5th day of August, 1905, the said Fred Robertson and wife sold, assigned and delivered an undivided half interest in and to said certificate to said land, if any he had, as well as an undivided one-half interest in and to any rents or profits he had therein, to the said W. J. Ratcliff.

"(11) That thereafter, and on the 19th day of June, 1907, the said John H. Hagener and wife made, executed and delivered to the plaintiffs a quitclaim deed to said land, and also their assignment of said certificate

of purchase, as well as their rights, if any, in and to any rents and profits of said land.

"(12) That upon the 20th day of November, 1907, the said John H. Hagener was duly discharged as such bankrupt from all his debts provable under the bankrupt law, and therafter, and on the same day, the said R. R. Hewitt, as such trustee, was duly discharged and the said bankrupt proceedings were fully and finally closed up and disposed of.

"(13) That said John H. Hagener and his grantors paid all the taxes upon said land up to the year 1900, and caused to be broken all of land, before the defendant acquired his tax-sale certificate to said land.

"(14) On August 15, 1905, plaintiffs tendered to the county treasurer of said county the sum of $630 lawful money, $170 of which was for the benefit of defendant Howard, and which was the full amount that was then due the state of Kansas, the said county of Rawlins and the defendant, Howard, each of which tenders were refused, although they fully covered everything that was then due, and such tenders have ever since been held good.

"(15) That thereafter, and on the 5th day of January, 1907, in an action then pending in the supreme court of the state of Kansas, in which the plaintiffs herein were plaintiffs and the county treasurer of said county was defendant, a peremptory writ of mandamus was by said court issued to said county treasurer to take the said money so tendered to him by said plaintiffs, the said $630, and as such officer receipt therefor, which he did, and such order, so far as the receipt and acceptance of such tender is final only as to the parties to said action, and thereafter and before the commencement of this action a patent for said land was issued to plaintiffs.

"(16) That the rents and profits of said land, so far as received by defendant, Howard, amount to the sum of $150, and the rental value of said land is $50 per annum.

"CONCLUSIONS OF LAW.

"(1) The plaintiffs, Fred Robertson and W. J. Ratcliff, by virtue of the various conveyances, assignments and certificates executed and delivered to them by the various parties named in the special findings of fact, and by the acts done by them therein stated, have ac-

quired a full and complete title and ownership in and to the land described and are the owners of the same, and are entitled to the possession thereof.

"(2) ·That as the board of county commissioners of Rawlins county has adopted the provisions of chapter 162, Laws of Kansas, 1891, being paragraph 7659 of the General Statutes of the state of Kansas for 1901, and the same being in full force and effect at the time of the sale of said land for delinquent taxes, and such sale being under the provisions of such laws, and the said property having been bid in by the county treasurer for said county, and three years not having expired at the time of the execution and delivery of the said tax-sale certificate by the county clerk to the defendant, Howard, the said county clerk had no authority or power to make such assignment, and such act on his part as such officer gave no interest in and to said land to said defendant, Howard, and the school-land certificate issued to defendant, Howard, being based upon such illegal acts of such county clerk, it, as well as such tax-sale certificate, was and is absolutely void and has no effect.

"(3) The defendant, Howard, having paid the taxes on said land in the sum of $170, is entitled to receive the same from the county treasurer of said county, in whose hands, as such officer, the plaintiffs deposited for defendant's use.

"(4) That the plaintiffs are entitled to the possession of the said land as such owners, and to a judgment for the sum of $150 rentals received by defendant, with interest thereon from this date at the rate of six per cent per annum.

"(5) As plaintiffs made a full and complete legal tender of said taxes so paid by defendant, before the commencement of this action, which tender has been kept good ever since, plaintiffs are entitled to the immediate possession of said land.

"(6) That the defendant Howard pay the costs of this suit.

"(7) That the defendant John Nevil has no interest in said land or in this action."

*J. P. Noble, L. H. Wilder, T. F. Garver,* and *R. D. Garver,* for the appellants.

*John E. Hessin,* and *Fred Robertson,* for the appellees.

The opinion of the court was delivered by

SMITH, J.: While the evidence afforded by the records and written instruments in the case shows that the trustee's sale of the school-land certificate was very irregular, if not void, we shall consider this case on the questions of law involved, and not review the findings of fact made by the court.

One question involved is whether the sale of the certificate by the trustee in bankruptcy conveyed any interest in the land, or whether it was necessary, in order to devest the certificate holder of his title in the land, to appraise and advertise the land itself for sale and sell it in the method provided by the laws of the United States. No attempt was made to sell the land as such; hence, of course, no steps prescribed by law for the sale of the land were taken.

The certificate is evidence of a contract between the state and the purchaser of the school land, and when such contract is executed and the purchaser makes a payment thereon in execution thereof he becomes the equitable owner of the land, subject to defeasance or forfeiture by noncompliance on his part with the conditions of the contract. The property acquired in the transaction by the purchaser is "land," or "real property," and is not "personal property." (Gen. Stat. 1868, ch. 104, § 1, subdiv. 8; Gen. Stat. 1909, § 9037, subdiv. 8.)

The school-land certificate in question is in every legal aspect like the state normal school-land certificate involved in *Poole v. French,* 71 Kan. 391. In that case this court held in substance that the right acquired by the purchaser was an equitable title to the real estate,

the sale of which is evidenced by the certificate, and that such title is subject to sale on execution. Such interest is also subject to attachment. (*Travis v. Supply Co.*, 42 Kan. 625.) It seems apparent, if the equitable title may be sold on execution or be subject to attachment in one judicial proceeding, that it can not in another forum be sold by a judicial transfer of the certificate; else one court may cause a valid sale of the certificate and another of the land at the same time.

It is contended by the appellees that the sale of the certificate by the trustee is a sale of the land, while they concede that the sale was irregular, and that the law of this state determines the character of the property as real estate, or land.

While the adjudication of bankruptcy conveyed this land and all the property of Hagener to the trustee appointed by the court, the court had no jurisdiction over the land. Its jurisdiction was *in personam*. (*Short v. Hepburn*, 21 C. C. A. 252.) The attempted sale of the land by the trustee is not simply irregular and erroneous; it is void. (*Watson v. Holden*, 58 Kan. 657; *McNutt v. Nellans*, ante, p. 424; *Short v. Hepburn*, supra; *Williams v. Nichol*, 47 Ark. 254; *Casseday v. Norris*, 49 Tex. 613.) The case last cited involved the validity of a sale of land in one county at the courthouse of another county in Texas, under an execution issued upon a judgment rendered by the United States circuit court at Austin, Tex. It was therein said:

"Sales of land made by the United States marshal, under execution, must be made in the county where the land is situated.

"A marshal's sale of land, part of which was in McLennan county, made at the courthouse of Bell county, held void as to that part lying out of Bell county." (Headnote.)

The United States district court for the southern district of Illinois has no jurisdiction in Kansas in bankruptcy, and a trustee appointed by it can only sell real

estate in this state under orders procured from some court having jurisdiction therein. (1 U. S. Comp. Stat. 1901, § 563, subdiv. 18.) So far as conveying any interest in the land in question, the sale of the certificate by the trustee is void.

Upon the adjudication that Hagener was a bankrupt, and upon the qualification of the trustee appointed by the court, the title to all the property of Hagener, including the land in question, vested in a sense in the trustee; and when a bankrupt is fully discharged the title to any of his property which has not been disposed of by the trustee reverts to him. But at all times Hagener had an *actual* interest in the property, which became a perfect title when it was not needed to pay his indebtedness or when for any reason the trustee was discharged without having used it for that purpose. This interest in the land in question, with the rents thereof, Hagener and wife conveyed to the appellees before he was discharged in the bankruptcy proceeding, and upon his discharge all his rights in and to the property held by the trustee reverted to his grantees. As was said in *Bird v. Philpott*, 69 L. J., n. s., Ch. Div., 487:

"The trustee takes all the bankrupt's property for an absolute estate in law, but for a limited purpose— namely, for the payment of creditors. . . . Subject to that, he is a trustee for the bankrupt of the surplus. . . . The bankrupt has not got the ordinary right of a *cestui que trust* to intervene, until the surplus has been ascertained to exist and all the creditors and interests and costs have been paid. He can not . . . interfere with the administration of the estate in any way, but subject to that, and subject to his noninterference with the administration and with the arrangements of the trustee during the bankruptcy in the due course of the execution of his duty, the bankrupt . . . has a right to the surplus—a right which he can dispose of by . . . deed or otherwise during the pendency of the . . . bankruptcy, even before the surplus is ascertained; although, of course, such dis-

position will be ineffectual unless there turns out to be a surplus eventually." (Page 491.)

(See, also, *In re Evelyn*, 63 L. J., n. s., Q. B. Div., 658.)

If while the bankruptcy proceedings were pending the bankrupt had died intestate there can be no doubt that upon the discharge of the trustee the title to the land would have vested in his heirs. If he had died testate it would have vested in his devisee. No reason is apparent why, where he has conveyed away his interest in his lifetime, the title should not vest in his grantee.

It is not contended that the appellants had a valid tax deed, or its equivalent, to the land. As we have determined that the appellees acquired all of Hagener's interest in the land, it follows that they were entitled to discharge the tax lien of the appellants thereon.

The judgment is affirmed.