HEIRS OF SHELBY CORZINE v. EDWARD WILLIAMS ET AL.

No. 18.

**1. Right of Survivor to Sell Community Property.**—It would seem that there must be some period of time after which, in the absence of proof to the contrary at least, it should be presumed as a matter of law that all obligations, pecuniary or otherwise, chargeable upon community property at the death of the husband, had been discharged.

**2. Same—Case in Judgment—Presumptions.**—The husband had been dead fifteen years when the widow assumed to convey a land certificate, community property, in discharge of an obligation against the common estate. In the meantime she had taken out letters of administration upon the estate, it had been partitioned either in whole or in part, and the administration had been closed. *Held:*

1. That her power over the community as survivor ought to be held to have ceased.

2. It would seem that any presumption which should be indulged by reason of lapse of time as to her power to make a conveyance would be met by the counter-presumption that she had fully administered the estate, and had exhausted her power over the community property.

3. The deed of the widow did not affect the rights of the heirs of the husband.

**3. Estoppel by Deed—Case in Judgment.**—The husband died in 1839. Soon after his death the widow took out letters of administration. Between 1840 and 1850 commissioners of partition were appointed. They made a report which was approved by the court. The administration was closed prior to 1855. No order of sale was made authorizing or confirming the sale of the land certificate in controversy. June 12, 1855, she executed a deed for the certificate, an unlocated balance, to Vivian, under whom the plaintiffs claim, reciting an order of court authorizing her " to execute and fulfill the contract of the deceased husband, * * * the said Vivian having delivered up to me the bond of said Shelby Corzine [the husband] to make title to one-half of said league and labor of land." The certificate sold was an unlocated balance, and less than half the acreage of the certificate described. *Held:*

1. Said deed was invalid as against the heirs of the husband.

2. That by reason of the recitals in the deed the heirs of the widow were estopped to deny the title of the grantee in the deed.

3. The recitals evidenced title, and the effect of them was not limited by the words of the deed which by its terms only conveyed " all the right, title, and interest of Shelby Corzine."

4. The children took nothing as heirs of their mother in the land certificate.

Error to Court of Civil Appeals for Second District.

This was an appeal from the District Court of Eastland County, in which a judgment was rendered that the plaintiffs take half the land in controversy and that the intervenors take the remaining half. The plaintiffs appealed.

The statement and conclusions of facts made by the Court of Civil Appeals on the decision of the case follow.

" The controversy in this case arises upon the admissibility and effect of the following instrument, read in evidence on the trial below:

" *The State of Texas, County of Harrison.*—Know all men by these presents, that, I, Sarah Corzine, administratrix of the estate of Shelby Corzine, by virtue of the power in me vested by the County Court of San Augustine County, to execute and fulfill the contract of Shelby Corzine, deceased, and as administratrix aforesaid, do hereby assign and forever relinquish to George W. Vivian all the right, title, and interest of the late Shelby Corzine, his heirs and assigns, in and to the following described land certificate number $\frac{1594}{1703}$, issued at Austin, August 23, 1850, to Shelby Corzine, assignee of Nancy Ussery, for 9,669,810 square varas, unlocated balance of headright certificate number 98, issued by the Board of Land Commissioners of San Augustine County to Sherby [Shelby] Corzine, assignee of Nancy Ussery, for one league and one labor of land, dated 1st February, 1838. The said George W. Vivian having delivered up to me the bond of said Sherby [Shelby] Corzine to make title to one-half of said league and labor of land.

" In testimony whereof, I hereunto affix my hand and seal, this 12th day of June, 1855, using a scroll by way of seal.

[Signed]    " Sarah Corzine.   [Seal.]

"Attest:

"J. M. Birdsong.

" S. S. Adams.

" This instrument purported to have been acknowledged before C. C. Galloway, a notary public at Gilmer, in Upshur County, March 31, 1859. It was recorded in Eastland County, where the land in controversy is situated, in May, 1878. It was admitted in evidence, over the objection of intervenors, as an ancient instrument, notwithstanding the attorney for intervenors had filed an affidavit to the effect that „he believed the same to be a forgery. It was shown that at least one of the subscribing witnesses was dead and the other could not be found, and that both had resided in Harrison County in about 1855, and that the officer who took the acknowledgment was dead, though the handwriting of his signature to the acknowledgment was clearly proven, by the deposition of his son, to be genuine. It was also shown by the deposition of Mrs. White, one of the intervenors, that about the date of said acknowledgment the grantor, her mother, was at Gilmer. The evidence also tended to show

that plaintiffs below, who claimed under said instrument, had obtained it from a person who had probably been the administrator of the estate of their ancestor. The intervenors claimed in opposition to this conveyance as the heirs of Shelby and Sarah Corzine.

" The record discloses that Shelby Corzine, with his wife Sarah, settled in San Augustine County in 1834 or 1835, and that he became the owner of headright certificate number 98, issued February 1, 1838, to Shelby Corzine, as the assignee of Nancy Ussery, for one league and labor of land; that Shelby died at San Augustine in 1839, and his relict, Sarah, died in Navarro County in 1870. Soon after his death Sarah Corzine took out letters of administration on his estate in San Augustine County, and returned an inventory, in which was included the original certificate, of which three-quarters appeared to have been located in Nacogdoches County, the balance then unlocated.

" It appears that commissioners were appointed in this administration to partition the estate, and that they made a report, which was adopted.

" The record does not disclose what that report was, nor how the property was partitioned, nor exactly when the partition proceedings occurred; probably, though, from 1840 to 1850. It is affirmatively shown that no order could be found in the minutes or among the papers pertaining to the estates of descedents in San Augustine County, authorizing any such sale as the above instrument indicates. It is affirmatively shown that all the probate minutes of said county have been preserved, and that no order could be found closing the administration and discharging the administrator, though Mrs. White testified by deposition that the administration was closed prior to 1855. It does not appear that any proceedings were had in said administration subsequent to the partition proceedings. There was no evidence of the existence of any bond of Shelby Corzine except the recital in said instrument. In October, 1860, George W. Vivian transferred the certificate described in said instrument as issued in 1850 to G. B. Woods, the father of plaintiffs below, and soon thereafter same was located on the land in controversy, but it does not distinctly appear by whom this was done. The patent was issued to Shelby Corzine, his heirs or assigns, in 1872. Plaintiffs instituted this suit on the 3d day of December, 1888, against defendants, to recover possession of the land in controversy, and intervenors filed their petition in intervention on the 14th of December, 1888.

" There was a trial before the court without a jury in January, 1890, which resulted in a judgment in favor of plaintiffs for one-half and intervenors for the other half of the land, from which judgment both plaintiffs and intervenors have appealed, the number of acres involved being 1476. We conclude that no order was ever made by the Probate Court of San Augustine County authorizing the administratrix of Shelby Corzine's estate to dispose of the certificate in controversy, and also that the

conclusion of the trial court is sustained in holding that the administration of this estate was closed prior to the execution of the conveyance quoted above.''

The Court of Civil Appeals reversed the judgment below and rendered judgment for the plaintiffs for the entire tract of land in controversy.

The intervenors prosecute the writ of error.

*D. G. Hunt*, for appellants, the plaintiffs below, and the defendants in error.— 1. A conveyance made by the surviving husband or wife in liquidation of an existing debt, contract, or obligation which is or may become a charge against the interest of the deceased spouse in the community estate, is valid, and binds the interest of the heirs of such deceased person. Rev. Stats., art. 2857; Wilson v. Helms, 59 Texas, 680; Burleson v. Burleson, 28 Texas, 383; Good v. Coombs, 28 Texas, 48; Johnson v. Harrison, 48 Texas, 257; Veramendi v. Hutchins, 48 Texas, 531; Wenar v. Stenzel, 48 Texas, 485; Mitchell v. De Witt, 20 Texas, 299; Primm v. Barton, 18 Texas, 206.

2. The court erred in holding that the intervenors had any interest in said land, when the same had been conveyed to George W. Vivian, the vendor of plaintiffs' ancestor, by Sarah Corzine, surviving wife of Shelby Corzine, deceased, who was the mother and grandmother of intervenors, because said deed made by said Sarah Corzine to said George W. Vivian, dated June 12, 1855, recited the existence of a community obligation, and the said Sarah Corzine recognized it as a valid and subsisting obligation against said community and paid or discharged it by the conveyance of the land in controversy to said Vivian; and the said intervenors are bound by the recitals in said deed, and are estopped to deny the existence of said debt or obligation, nearly thirty-five years after its payment by the said survivor of said community. Gould v. West, 32 Texas, 338; Portis v. Hill, 30 Texas, 529; Jones v. Jones, 15 Texas, 148; Primm v. Barton, 18 Texas, 225; Watrous v. McGrew, 16 Texas, 514; 3 Washb. on Real Prop., 99; Teid. on Real Prop., sec. 731; 11 How., 321; 21 How., 228; Johnson v. Timmons, 50 Texas, 521.

3. The court erred in holding that said deed from Sarah Corzine to George W. Vivian was not good as an administratrix's deed in the absence of proof of an order of sale, report, and confirmation of sale, because the Probate Court is a court of general jurisdiction, and after a lapse of nearly thirty-five years from the date of the deed, when the parties claiming it had taken the depositions of the clerk of the court, who was the custodian of the papers and records of the county where such administration was pending, for the purpose of showing the existence of such orders, and when none could be found, the court would presume the existence of the same in support of said deed. Johnson v. Shaw, 41 Texas, 428; White v. Jones, 67 Texas, 638; Baker v. Coe, 20 Texas, 430; Graham v. Haw-

kins, Posey's U. C., 513; Bayne v. Garrett, 17 Texas, 334 Menifee v. Hamilton, 32 Texas, 513.

*D. G. Hunt,* on motion for rehearing, cited: Hensel v. Kegans, 79 Texas, 347; Auerbach v. Wylie, 84 Texas, 615; McDonald v. Hamblen, 78 Texas, 628; Johnson v. Timmons, 50 Texas, 534; Veramendi v. Hutchins, 48 Texas, 532; Box v. Word, 65 Texas, 159; Primm v. Barton, 18 Texas, 225; Jones v. Jones, 15 Texas, 148.

*R. B. Truly* and *Moore, Williams & Butts,* for intervenors, the plaintiffs in error.—1.  There was no legal proof that the deed was executed in liquidation of a debt or obligation which either was or might become a charge upon the community estate of the maker and her deceased husband.  Yancy v. Batte, 48 Texas, 46; Edwards v. Brown, 68 Texas, 335.

2.  The rule invoked by appellants has no application, because the deed under which they hold was not executed by Sarah Corzine as the surviving wife of her deceased husband in satisfaction of a community debt, but in her capacity as administratrix of his estate, and its validity must be tested by the law probate.

3.  Recitals in administrator's deed made without the authority or approval of the court can not prejudice the estate, or per se estop the heirs of the deceased, as they are not parties to the deed in so far as the interest inherited from the deceased is concerned.  Bartley v. Harris, 70 Texas, 183; Tucker v. Murphy, 66 Texas, 359; Terrell v. Martin, 64 Texas, 125; Mast v. Tibbles, 60 Texas, 307.

4.  The orders of the Probate Court being matters of record, in the absence of proof of the loss or destruction of the records, this court can not presume the existence of orders requisite to the validity of an administrator's deed, however general the jurisdiction of the Probate Court may be, or however ancient the deed may be.  Bray v. Aikin, 60 Texas, 691; Mast v. Tibbles, 60 Texas, 307.

5.  The deed did not purport to convey the entire property sued for nor the grantor's interest therein, but only the interest of her deceased husband.  Perrin v. Perrin, 62 Texas, 480; Robinson v. Martel, 11 Texas, 153.

GAINES, Associate Justice.—This is a writ of error to the Court of Civil Appeals of the Second Supreme Judicial District, from a judgment of that court reversing and rendering the judgment of the trial court.

The action was one of trespass to try title, and was brought by Edward Williams and others as plaintiffs against John T. Hardin and others as defendants.  Elizabeth White and others intervened, claiming the land as heirs of Shelby Corzine and Sarah Corzine.  Upon the trial of the cause, the defendants showed no title, and the court gave judgment for the

plaintiffs for one undivided half of the land and for intervenors for the other half. The plaintiffs appealed, and the Court of Civil Appeals reversed the judgment of the trial court, and rendered judgment for the plaintiffs for the entire premises in controversy.

The land was patented to Shelby "Corzine, his heirs or assigns," by virtue of a certificate for the unlocated balance of a former certificate issued to Nancy Ussery. The court found that the certificate belonged originally to the community estate of Shelby Corzine and Sarah Corzine, who were husband and wife, and that the intervenors were their heirs. The plaintiffs claimed under one George W. Vivian, to whom Sarah Corzine executed a purported transfer of the certificate. The court found that that transfer, though attacked as a forgery, had been duly executed. The following is a copy of the instrument:

" *The State of Texas, County of Harrison.*—Know all men by these presents, that I, Sarah Corzine, administratrix of the estate of Shelby Corzine, by virtue of the power in me vested by the County Court of San Augustine County to execute and fulfill the contract of Shelby Corzine, deceased, do hereby assign and forever relinquish to George W. Vivian all the right, title, and interest of the late Shelby Corzine, his heirs and assigns, in and to the following described land certificate number $\frac{1594}{1703}$, issued at Austin, August 23, 1850, to Shelby Corzine, assignee of Nancy Ussery, for 9,669,810 square varas, unlocated balance of headright certificate number 98, issued by the Board of Land Commissioners of San Augustine County to Shelby Corzine, assignee of Nancy Ussery, for one league and labor of land, dated 1st February, 1838. The said George W. Vivian having delivered up to me the bond of said Shelby Corzine to make title to one-half of said league and labor of land.

" In testimony whereof, I hereunto affix my hand and seal, this 12th day of June, 1855, using scroll by way of seal.

"SARAH CORZINE."

This instrument was signed by two subscribing witnesses, and was acknowledged by a notary public in March, 1859. In addition to the foregoing, the conclusions filed by the Court of Civil Appeals show the following facts: Shelby Corzine and Sarah, his wife, settled in San Augustine County in 1834 or 1835. He died in that county in 1839, and she died in 1870. Soon after her husband's death, Sarah Corzine took out letters of administration in San Augustine County upon his estate. It appears that sometime between 1840 and 1850 commissioners were appointed to make partition of the estate; that they made a partition and report, and that the report was adopted. No order was found upon the minutes or among the papers of the County Court of San Augustine County authorizing the administratrix to transfer the certificate, nor did any order appear closing the administration and discharging the administratrix. It was affirmatively shown that all the probate minutes of the county had

been preserved. There was testimony that the administration had been closed prior to the year 1855. The Court of Civil Appeals concluded, that no such order was made as that recited in the purported transfer of the certificate, and that at the time of its execution the administration had been closed. It was also found that there was no evidence of the existence of the bond for title from Shelby Corzine to George W. Vivian, except the recital in the instrument herein before set out.

Upon this state of facts, the Court of Civil appeals held, in effect, that Sarah Corzine, as surviving wife, had the power to transfer the certificate in discharge of her husband's written obligation to that effect, and that after the lapse of more than thirty years, which has occurred since the transaction, it should be presumed that the bond for title, as recited by her, did actually exist. In this view we do not concur. That the survivor in community may sell the common estate for the purpose of paying the debts against it, is too well settled to admit of question in this court; and it would seem that the reasons for the exercise of a similar power in case of an outstanding title bond are equally cogent. But we do not understand that this power necessarily continues under all circumstances throughout the life of the survivor. When either the husband or the wife dies intestate, an undivided half of the common estate descends to his or her heirs, as the case may be, subject only to the payment of debts. With the qualification stated, their right in the property is equal to that of the survivor; and from that principle it would seem to result that there must be some period of time after which, in the absence of satisfactory proof to the contrary at least, it should be presumed as a matter of law that all obligations, pecuniary or otherwise, chargeable upon the property had been discharged.

That the surviving wife can not sell the community property to pay community debts during an administration upon her deceased husband's estate, is not to be questioned. Whether she has power to do so or not after an administration has been closed which leaves the estate unsettled, we need not here decide. Here we have a case in which the husband had been dead more than fifteen years when the wife assumed to convey the community property in discharge of an obligation against the common estate. In the meantime she had taken out letters of administration upon the estate, it had been partitioned, either in whole or in part, and the administration had been closed; and we think that her power over the community as survivor for any purpose ought to be held to have ceased. And in this case, at least, it would seem that any presumption of power which should be indulged by reason of lapse of time, as to her power to make the conveyance, would be met by the counter-presumption that she had fully administered the estate and exhausted her power over the community property. We conclude that the deed, in so far as it sought to

convey the interest in the certificate which belonged to her deceased husband in his lifetime, was executed without authority of law.

This brings us to the question of the effect of the purported transfer of Sarah Corzine upon her interest in the certificate. Although executed before the passage of our statute which dispensed with the use of seals, it is both signed and sealed by the assignor, and is therefore a deed. The recitals in the deed as to her authority were found not to be true. Not only had the court made no order directing her as administratrix to make the conveyance, but she had at the time ceased to be administratrix of her husband's estate. As administratrix she could convey nothing, and she does not attempt to convey in any other capacity. The instrument does not even purport to convey any interest but that of her husband. It follows, that if it took effect at all, it must have been by way of estoppel. "Few rules of law are better established as of greater antiquity than that a man may bind himself irrevocably by putting his seal to a grant or covenant, and will not be allowed to contradict any declaration or averment contained in the instrument and essential to its purpose. A recital or allegation in a deed or bond, which is certain in its terms and relevant to the matter in hand, will therefore be conclusive between the parties in any controversy growing out of the instrument itself or the transaction in which it was executed." Smith's Lead. Cases, 8 ed., Am. note, p. 819, and cases cited.

The doctrine of an estoppel by deed is essentially different from that of an estoppel in pais, and is founded upon the theory that the parties have contracted upon the basis of the recited facts. The instrument in question recites, that the grantor is the administratrix of her deceased husband's estate; that a court which could have had jurisdiction over the estate had ordered her to fulfill the obligation of a certain bond, by which her intestate had bound himself to make title to Vivian to one-half of the Nancy Ussery certificate, by conveying to the obligee a certificate which had been issued for the unlocated balance of the original. It purports to convey the interest of the intestate as directed in the order of the court. If the facts which are so recited, and which Sarah Corzine was estopped to deny, had been true, what would have been the effect of the deed? Clearly it would have been to convey the entire property in the certificate to the grantee, unless its operation is to be restricted by the use of the words, "all the right, title, and interest of the late Shelby Corzine."

But in the lifetime of the husband the community estate is managed in his name, and upon his death it is administered in his name, and sold and conveyed simply as his property. Therefore we are of opinion, that if the facts recited in the deed had been true it would have passed not only the interest of the deceased husband in the certificate, but also that of the wife. Sarah Corzine, the grantor, was therefore estopped by the deed to claim any interest in the certificate as against Vivian, the grantee, and

those claiming under him, and her heirs are bound as privies by that estoppel.   It follows that the intervenors could claim nothing through her; but they are not precluded from claiming as the heirs of Shelby Corzine the interest which she had no power to convey, and which did not pass by the deed made by her.

It follows that the plaintiffs are entitled to recover one-half of the land located by virtue of the certificate for the unlocated balance of the Nancy Ussery league and labor; and that the intervenors are entitled to recover the other half, as adjudged by the trial court.

The judgment of the Court of Civil Appeals is accordingly reversed, and the judgment of the District Court of Eastland County is in all things affirmed.

*Affirmed.*

Delivered May 18, 1893.