## SLAUGHTER v. MALLET LAND & CATTLE CO.

(Circuit Court of Appeals, Fifth Circuit. October 2, 1905.)

No. 1,415.

1. **COURTS—JURISDICTION OF FEDERAL COURTS—TRANSFER OF RIGHT OF ACTION —COLLUSION.**

The conveyance of all of the property of a partnership to a corporation organized for the purpose by the partners and the division between them of the stock of the corporation, a small part of such property consisting of lands in controversy in a subsequent action brought by the corporation in a federal court, cannot be *held* a simulated or sham transfer which will oust such court of jurisdiction because the partnership could not have sued therein, where the conveyance was bona fide and no reconveyance was contemplated.

2. **QUIETING TITLE—DEFENSES—POSSESSION.**

Where complainant and its predecessors in interest had been in the peaceable possession and occupancy of lands in controversy for a number of years, at first under leases and later under a conveyance from the lessor made pursuant to an option to purchase contained in the leases, defendant could acquire no lawful possession by a forcible entry on the lands which would deprive complainant of the right to maintain a suit in a court of equity to quiet its title and for an injunction against further trespasses by defendant as incidental thereto.

3. **ABATEMENT AND REVIVAL—ANOTHER ACTION PENDING—FEDERAL AND STATE COURTS.**

The pendency in a state court of an action of trespass to try title to land and to remove a cloud from the title does not place the land in the exclusive possession of that court, in such sense that it is a ground for abatement of a subsequent suit in a federal court between the same parties to quiet title to the same land.

[Ed. Note.—For cases in point, see vol. 1, Cent. Dig. Abatement and Revival, § 87.]

4. **COUNTIES—ORDER OF COMMISSIONERS' COURT—VALIDITY.**

The failure to enter an order made by a commissioners' court of a county in Texas on the minutes, where it was duly made and a copy filed with the clerk for entry, does not affect the validity of acts done thereunder.

5. **SAME—CONTRACT—RATIFICATION.**

The recognition of a lease of lands made in behalf of a county by the county commissioners, by receiving the rentals thereunder and by making subsequent contracts expressly subject thereto, is a ratification of such lease, which cures any informality in its original execution.

6. **LANDLORD AND TENANT—OPTION TO PURCHASE IN LEASE—VALIDITY.**

A provision in a lease of land by a county that, in case the county should desire to sell the land at the expiration of the term of the lease, "the lessees herein shall have the preference right to purchase said land at any bona fide offer made and acceptable to Edwards county by any responsible party," is not void for uncertainty, but gives the lessees a valid option.

7. **SAME—EXECUTION OF CONTRACT.**

In a lease by a county the lessees were given an option to purchase the land at the end of the term, should the county desire to sell. Subsequently the county entered into a contract with defendant with respect to the land, expressly subject, however, to the rights of the lessees. At the expiration of the term the county sold the land to the lessees. *Held*, that so far as the rights of defendant were concerned it was immaterial that by agreement the terms of the final contract of sale were varied somewhat from those specified in the lease.

8. PUBLIC LANDS—SCHOOL LANDS—LEASE BY COUNTY COMMISSIONERS.

County commissioners' courts of Texas counties, which under the law of the state are general trustees for the leasing and sale of county school lands, have power in leasing such lands to contract that the lessee shall have a preference right to purchase should the county desire to sell, and such a contract is not void as contrary to public policy.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

This suit was brought in the United States Circuit Court on December 25, 1903, by the Mallet Land & Cattle Company, a corporation duly incorporated under the laws of the state of Missouri, for an injunction to restrain the defendant, C. C. Slaughter, from trespassing upon the plaintiff's land, known as the Edwards county school lands, consisting of 17,712 acres situated in Hockley county, Texas, and to remove cloud from title to said lands.

The substantial facts set forth in the plaintiff's bill and amendment thereto, in connection with the exhibits thereto attached and filed, in the order of their happening, are as follows: That previous to June 1, 1898, D. M. De Vitt and one Scharbauer held the possession of said land under a lease contract from Edwards county, containing the stipulation that "lessees herein shall have the preference right over all others to purchase said lands during the continuance of this or any subsequent lease contract entered into by them, they paying the highest price that can be obtained," which lease was duly authorized by order of the commissioners' court of Edwards county June 9, 1896, to be made by James M. Hunter, county judge of Edwards county. That the firm of De Vitt & Scharbauer was dissolved, one Flato succeeding to said Scharbauer's interest in the lease and in the business, and the same was continued by De Vitt & Flato. That on June 1, 1898, De Vitt & Flato, a partnership composed of D. M. De Vitt and F. W. Flato, then engaged in the ranching and cattle business, with this land as a part of their ranch, obtained a lease from Edwards county of said lands for five years from that date at the price of 2½ cents per acre per annum, payable semiannually, with a stipulation in the lease contract as follows: "It is also agreed and understood that the lessees herein shall have the privilege of re-leasing the said land again at the expiration of this lease at any rental price and on terms offered and acceptable to Edwards county that may be made bona fide by any responsible party, but in the event that Edwards county should desire to sell the said land herein mentioned at the expiration of this lease, then in that event the lessees herein shall have the preference right to purchase said land at any bona fide offer made and acceptable to Edwards county by any responsible party; and the said lessees shall have a written notice giving them ninety (90) days in which to purchase the said land after the expiration of the lease." While there was no order entered upon the minutes of the commissioners' court of Edwards county authorizing said lease to De Vitt & Flato, the same was fully ratified and confirmed by Edwards county, because with full knowledge of the facts it accepted the rental, and that at the inception of the attempted title of C. C. Slaughter, and in the contract between Edwards county and W. E. Kaye, the title to be granted was made subject to the rights of De Vitt & Flato, as herein set forth. It is appropriate to further state at this point that it was proven by the testimony of James M. Hunter that he executed the lease contract to De Vitt & Flato with the stipulation contained, acting on behalf of the commissioners' court of Edwards county, and by its authority under the order of said court, which by oversight was not entered upon the record, and that the lease contract was read to the court in open session and approved by all of the commissioners. That he was directed by unanimous vote of all of them to execute that contract on behalf of Edwards county, duplicate of which was filed with the county clerk of said county for record upon the minutes, but by some oversight was not there recorded. That De Vitt & Flato, being in possession of said land, continued to use and occupy it as an inclosed pasture, and conducted the business of raising and grazing cattle thereon, having a large amount of other land also inclosed in said pasture, and that that possession

continued uninterrupted until the trespasses against that possession committed by C. C. Slaughter, as hereafter stated, which constituted the disturbance of the possession against which the injunction herein was sought and obtained, and that said possession likewise continued, notwithstanding the attempts in the part of C. C. Slaughter, to forcibly dispossess the plaintiff's predecessors in title up to the time of the plaintiff's purchase of the land, and thereafter the plaintiff, of the possession thereof; such trespasses being continuous from October 17, 1903, to the date of filing the plaintiff's bill, to wit, December 25, 1903. That on March 9, 1899, the commissioners' court of Edwards county made a contract with W. E. Kaye, appointing him as agent of Edwards county to sell this land at the net price of 85 cents per acre, he to receive as a commission all over that sum which he could obtain; but the sale to be made subject to all of the rights of the lease contract of De Vitt & Flato of date June 1, 1898. That previous to that date and the 3d day of January, 1898, said Slaughter had made a contract with F. G. Oxsheer, whereby said Oxsheer was to purchase for said Slaughter the Edwards county school lands under a contract, and Slaughter advanced the part of the purchase money paid to Edwards county in the purchase in the name of R. S. Ferrell through W. E. Kaye, and that said Kaye was in truth and in fact but the agent of C. C. Slaughter in the procuring of the transfer from Edwards county to R. S. Ferrell under which C. C. Slaughter claimed title. In pursuance of the arrangement made with F. G. Oxsheer by C. C. Slaughter, and the arrangement made by F. G. Oxsheer with W. E. Kaye, and between W. E. Kaye and R. S. Ferrell, said Kaye entered into a contract with Edwards county, whereby in lieu of the contract of March 9th said W. E. Kaye, as agent of Edwards county, bound himself to sell said land at 85 cents net, on or before August 1, 1899, in consideration of $5,055.20 cash and the additional sum of $10,000 payable in certain installments as set forth, and, in the order of the commissioners' court evidencing the contract, the said lease contract of June 1, 1898, between Edwards county and De Vitt & Flato, recited to be recorded in Hockley county, Tex., was made a part of the contract with W. E. Kaye, and the county judge of Edwards county was authorized to complete such sale as W. E. Kaye might make in accordance with that order, subject to the terms and rights of De Vitt & Flato under the said contract of June 1, 1898, and Kaye was to receive as his compensation for making such sale any sum above the amount of $15,055.20. That as part of the same transaction, on the said 8th of May, 1899, said Kaye, acting as agent for said Edwards county, in the name of R. S. Ferrell, made and procured a contract of sale to R. S. Ferrell, whereby James M. Hunter, county judge of Edwards county, acting under the authority of the said order of the commissioners' court of May 8, 1899, for the purported consideration of $17,712, but for the consideration received by the county of $15,055.20, conveyed said land to R. S. Ferrell. That under date of May 24, 1899, said R. S. Ferrell, without consideration, transferred all of his right, title, and interest in said land to C. C. Slaughter, and in the deed stipulated that "the said C. C. Slaughter hereby accepting the contract of sale as made to me by said Edwards county, Texas, under all of the conditions and specifications therein contained." But this transaction, it is alleged, was but the carrying out of a previous contract between said C. C. Slaughter and F. G. Oxsheer to purchase said land, as well as other lands embraced in that contract, whereby said Slaughter, through Oxsheer, and Oxsheer by using Kaye, and Kaye by using Ferrell's name completed the transaction as contemplated in the contract between Slaughter and Oxsheer, said Ferrell being merely a man of straw; and it is alleged said Slaughter had notice of the fact that said Kaye was to receive and keep as a part of the consideration for said sale as commission to him $2,656.80, which rendered the contract null and void, all of which is fully set forth in paragraph 5 of plaintiff's bill. That on the 13th day of February, 1902, Edwards county, through its commissioners, recognizing the rights of De Vitt & Flato to purchase said lands under the terms of their said lease contract, authorized its county judge, S. A. Hough, to execute a contract for the purchase by De Vitt & Flato, and sale by Edwards county of said land, at the price of 90 cents per acre. And Edwards county thereby bound itself to sell said land at the expiration of its lease of June 1,

1903, for said consideration, which contract was fully complied with by De Vitt & Flato, same having been made in order to grant them full rights that they had under their preference right of purchase, which right the said C. C. Slaughter had through the means aforesaid undertaken to destroy, but that the commissioners' court, having preserved said right by the stipulations in the contract with W. E. Kaye and R. S. Ferrell, were acting within their perfect lawful authority, in making such contract of February 13, 1902, with De Vitt & Flato, for the purpose and intent of preserving intact their said preference right to purchase said land at the expiration of said lease, and that said Edwards county thereby rescinded and revoked the pretended sale to R. S. Ferrell, as it had the right to do, for the purpose of so preserving the said right of De Vitt & Flato to purchase said land. That immediately after the expiration of the lease contract of June 1, 1903, De Vitt & Flato tendered said purchase money and notes, as stipulated in the contract of February 13, 1902, to Edwards county and demanded a conveyance of the land, which Edwards county postponed making from time to time, being threatened with litigation, and, recognizing that De Vitt & Flato had fully performed their contract, said Edwards county, through its commissioners' court, on November 14, 1903, for valuable consideration, to wit, $1 per acre, executed and delivered to De Vitt & Flato a general warranty deed conveying the land in controversy to them in fee, and in doing so were but carrying out and performing the legal obligations of the county arising through the preference right to purchase contained in the lease contract of June 1, 1898, and the subsequent contract of sale of date of February 13, 1902, and the other facts hereinbefore stated.

The lands involved in this suit were patented to Edwards county by the state of Texas as the amount of lands awarded to the Permanent Public Free School Fund of that county. The constitutional provision affecting the same is section 6, art. 7, which provides in part as follows: "Said lands and the proceeds thereof when sold shall be held by said counties alone as a trust for the benefit of the public schools therein; said proceeds to be invested in bonds of the United States, the state of Texas, or counties in said state, or in such other securities and under such restrictions as may be prescribed by law; and the counties shall be responsible for all investments; the interest thereon, and other revenues, except the principal, shall be available fund." The same article also provides: "Each county may sell or dispose of these lands in whole or in part in manner to be provided by the commissioners' court of the county."

An answer to a rule to show cause why an injunction should not issue was by consent taken as an answer to the bill, and presents defenses, to wit: No jurisdiction, because of colorable transfer from De Vitt & Flato to complainant; no jurisdiction in equity, because of adequate remedy at law; plea in abatement based on action between De Vitt & Flato v. Defendant Slaughter, pending in the district court of Lubbock county, Tex., involving the same subject-matter; the validity of title in Slaughter to the lands in controversy under Kaye's contracts, and the deed of Edwards county of May 17, 1899, to R. S. Ferrell; and the good faith of Slaughter.

The Circuit Court overruled the demurrers and the pleas in abatement to the jurisdiction, and decreed in favor of the plaintiff as prayed for in the bill. Other facts are given in the opinion of the court.

K. R. Craig, for appellant.
Sam. H. Cowan and Henry Sayles, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

PARDEE, Circuit Judge (after stating the facts). The jurisdiction of the Circuit Court was attacked on the charge that the transfer of the property from De Vitt & Flato to the complainant was colorable and collusive, for the purpose of bringing suit in the United States court for the Northern District of Texas. The appellant states his conten-

tion in this court in the second and third assignments of error as follows:

"Second. The trial court erred by overruling respondent's plea to the jurisdiction filed and presented in said cause, for the reason that it was made to appear by the proof taken and introduced on said plea that this cause did not involve a controversy substantially between citizens of different states; it appearing that complainant corporation was organized, and the property involved transferred to it by De Vitt & Flato for the sole purpose of giving the United States Circuit Court jurisdiction, which it otherwise did not have, and that this suit is being prosecuted substantially and in effect for the use and benefit of De Vitt & Flato, complainant's vendors, who, on account of the residence of one of the partners in Texas, were not entitled to prosecute this suit in the United States Circuit Court.

"Third. The court erred by retaining jurisdiction of this cause and not dismissing the same after it was made to appear on the trial that the complainant corporation was organized by De Vitt & Flato, and the conveyance of the property in controversy made by them to complainant corporation for the sole purpose of giving jurisdiction to the United States Circuit Court; the said court not having jurisdiction while the property was in the name of De Vitt & Flato. That said conveyance was wholly without consideration and was colorable only, the said De Vitt & Flato by their ownership of the stock of the corporation retaining substantially the same ownership in and dominion over the property, they therefore had the power to reconvey the same at their option."

The transfer by De Vitt & Flato to the complainant was an unconditional and apparently valid transfer of the title and ownership of the land in controversy, and, according to the evidence, the transfer was made under the following state of facts:

De Vitt and Flato became partners in the cattle business in the fall of 1898, having their ranch in Hockley county, Tex., consisting of lands in Hockley and adjoining counties, cattle, horses, fences, and ranch equipment. De Vitt lived in Texas and Flato in Kansas City, Mo. In the course of time, up to 1903, the firm became indebted to a Kansas City bank in the sum of $43,000, and Flato became indebted to the same bank on his individual account. De Vitt and Flato had been contemplating the formation of a corporation for some time, to guard against trouble in the courts in case of the death of either of the members, and to facilitate the use of their assets not only in firm matters but in individual matters as well. The Kansas City bank, creditor of the firm and of Flato, desired the formation of a corporation that Flato's stock might be placed with the bank as security. Some delay occurred in the formation of the proposed corporation, but finally on the 18th day of December, 1903, articles of incorporation of the Mallet Land & Cattle Company in the state of Missouri were acknowledged with a capital stock of the company of $100,000, consisting of 1,000 shares of $100 each, of which 544 shares were assigned to De Vitt and 452 shares to Flato, and the other four shares assigned to O. G. Young and D. F. Deatherage, Oland Young and S. R. Hansell for legal services. On the 21st day of December the certificate of incorporation was issued by the Secretary of State of Missouri, and on the same day a deed was executed by De Vitt at Ft. Worth, Tex., in the partnership name of De Vitt & Flato, conveying to the Mallet Land & Cattle Company all the lands owned or held under lease by the firm of De Vitt & Flato, including the lands in controversy. This deed was

mailed the same day to Flato at Kansas City. On the same date a bill of sale was executed by De Vitt for the partnership, conveying to the Mallet Land & Cattle Company all the cattle, horses, ranch and other personal property belonging to the firm. The property thus conveyed constituted the entire assets of the Mallet Land & Cattle Company. The Mallet Land & Cattle Company assumed all the indebtedness of De Vitt & Flato, and this constituted all the liabilities of the Mallet Land & Cattle Company.

On the hearing De Vitt testified that the main reason for organizing a Missouri corporation and transferring to it all the partnership property was so that they, the partners, could get their interests in the business in the form of collateral and so use them in their private transactions. The matter was discussed at various times for over a year and they had decided to incorporate. Another reason was that one of the partners might die and that that might get the partnership property in the courts. Being asked if it is not a fact that the said charter was obtained in great haste about the time it was obtained in order that a suit might be brought in the United States court against C. C. Slaughter for the Edwards county school lands, he answered: "No, sir; it is not a fact that that was the purpose of it." And, on renewal of the question, reiterated his answer. He, further, answered that he was acquainted with the circumstances connected with the litigation between De Vitt & Flato and C. C. Slaughter over the Edwards county school lands, but he denied that the defeat of De Vitt & Flato in that litigation on or about the 18th of December, 1903, prompted the acquisition of the charter of the Mallet Land & Cattle Company at the time it was obtained. Being further inquired of as to the object of, and what led to, the agreement to incorporate at that time, he answered, "Our principal object was so that each one of us could get in a tangible form and separate our interest in the business in the form of collateral, that we could use it for private matters." Further, that the taking out of the charter was delayed for want of settlements between the parties as to their individual interests, and because they had a contract of purchase from Edwards county of their school land and they did not know what effect it might have to incorporate and transfer their claims to the new corporation without having first secured a deed from the county. He says the charter was written up the latter part of September, 1903, in Kansas City. The evidence of De Vitt is fully corroborated by that of Flato, and is not disputed or contradicted by any witness nor by any circumstances proved in the case.

On this state of facts, we conclude that the transfer of De Vitt & Flato to the complainant of the title and ownership of the lands in controversy was in good faith and for a valid consideration, was unconditional, and passed full title for all lawful purposes.

The appellant relies upon Lehigh Manufacturing Co. v. Kelly, 160 U. S. 327, 16 Sup. Ct. 307, 40 L. Ed. 444, but we find the case inapplicable because the facts and circumstances are different from those in the present case. In no just sense can we say that the organization of the Mallet Land & Cattle Company, and the transfer thereto for stock of all the property of De Vitt & Flato, including incidentally, and as

only a small part thereof, the lands in controversy, was all a sham transaction. If it was not a simulation—a sham—then, so far as jurisdiction is concerned, the purposes of De Witt and Flato in the transaction are immaterial. See Lehigh Manufacturing Co. v. Kelly, supra, for authorities.

Irvine Co. v. Bond et al. (C. C.) 74 Fed. 849, was a case very similar in many respects to the present case, and it was there held that as the transaction was real and no reconveyance contemplated, the jurisdiction of the court properly attached, citing Lehigh Manufacturing Co. v. Kelly and authorities there cited.

In his fourth, thirteenth, eighteenth, and twentieth assignments of error, the appellant raises, in different aspects, the question of jurisdiction in equity to grant the complainant relief, insisting that the complainant has a full, complete, and adequate remedy at law. The bill seems to be one to prevent trespass and to remove cloud from title, and the turning question as to jurisdiction is whether the complainant was, at the institution of the suit, in possession of the lands in controversy. The case shows that originally De Vitt & Scharbauer entered into lawful possession under a lease from Edwards county; that De Vitt & Flato succeeded to the rights and possession of De Vitt & Scharbauer, and from that time on held possession under that and a subsequent lease, which expired June 1, 1903; from which time they continued to hold under contract of sale and actual sale from Edwards county; that in the fall of 1903 their possession was disturbed by the claims of Slaughter, who, with more or less violence, undertook to take possession of the said land, resulting at best in a disputed joint occupancy. The attempts of Slaughter, no matter how successful, to take forcible possession of the land, cannot be recognized as giving him actual and lawful possession, nor be made the foundation of any right between him and complainant, nor deprive the complainant from proceeding with a bill to remove cloud, with preventive relief against the attempted disturbances of title and possession. See Thomas v. Nantahala Marble & Talc Co., 58 Fed. 485, 7 C. C. A. 330; Pokegama S. P. Lumber Co. v. Klamath Lumber & Imp. Co. (C. C.) 86 Fed. 528; Pittsburg Railroad Co. v. Fiske, 123 Fed. 760, 60 C. C. A. 621. We conclude, therefore, that there was no error in overruling the demurrer and pleas to the equitable jurisdiction of the Circuit Court.

The appellant, as respondent in the Circuit Court, filed a plea in abatement based on a former suit pending between complainant's vendors and the defendant, and introduced in evidence in support thereof the original petition filed by De Vitt & Flato in the district court of Lubbock county, Tex., on the 24th day of October, 1903, and also an amended petition presented in vacation on hearing of the motion to dissolve the injunction granted upon the original petition, which amended petition was presented without filing under an agreement between counsel for the plaintiff and defendant in that cause. The original petition was for an injunction against the defendant, Slaughter, and three of his employés, to restrain them from digging a well on the land and building a fence on the lands herein in controversy. The amended petition, in addition to the prayer for injunction in the

original, prayed for enlargement of the injunction so as to require the defendant, Slaughter, to remove a fence that he had been erecting upon said lands. The writ of injunction issued on the original petition on the 24th day of October, 1903, served on the defendant in that case, was in evidence, as also the answer of the defendant, which consisted of a plea in abatement setting up the pendency in the county court of Lubbock county, Tex., of a suit against the defendants to restrain them from the same trespass which the injunction in the suit of the district court was sued out to restrain, exceptions to the petition, an answer under oath, and an amended answer setting up more fully the facts in relation to the title and trespass complained of by the plaintiff.

There was also in evidence a motion by the defendant to dissolve the injunction issued out of the district court of Lubbock county, Tex., in above-styled case, presented to Judge Morgan in vacation, which motion was presented without filing, as were the amendments in the case, under the agreement before mentioned, also the order of the judge of the Fiftieth judicial district court, made on the hearing of said motion in vacation on the 18th day of December, 1903, by which said writ of injunction was dissolved and the case continued on the docket for trial. This order of the judge made in vacation was filed in the district clerk's office of Lubbock county on the 23d day of December, 1903, and entered in the minutes of the court. The pleadings presented to the judge on hearing of said motion, referred to in the agreement aforesaid, were subsequently filed in the office of the clerk of the district court of Lubbock county January 6, 1904. The defendant also put in evidence a cross-bill filed by defendant in the said cause, De Vitt & Flato v. C. C. Slaughter, in the district court of Lubbock county, on the 31st day of December, 1903, praying for affirmative relief by removing cloud from title to the lands in controversy. The plaintiff put in evidence in the same connection what is styled "plaintiff's first amended original petition in lieu of original petition filed the 21st day of December, 1903." This amendment purports to be filed in vacation, and is practically a copy of original petition filed in the case, except that it recites at the conclusion that:

"The plaintiffs had sold the land to the Mallet Land & Cattle Company, and that said Mallet Land & Cattle Company are now and were on the 21st day of December, 1903, the legal and equitable owners of all of said property, and that plaintiffs disclaim any right or title or ownership in or to said property in any manner whatever."

As we understand the pleadings and proof, the suit in the state court was, at its inception, one for an injunction to prevent trespass, and by the first amended original petition was converted into a suit to recover damages for trespass; the plaintiff entering a disclaimer as to the ownership and title to the lands in controversy. Whether the answer and cross-bill of Slaughter operated to convert the case into one of trespass to try title and to remove cloud from title is strongly argued by counsel on both sides, citing very pertinent authorities to sustain the propositions advanced. As we view the matter, however, the pendency of the proceedings in the state court, even if proved to the fullest extent, pleaded by the appellant, and conceding that the complainant here-

in is bound thereby as though a party by name and process, constitutes no sufficient ground to abate the present suit. Where property is in possession of a state court, suits thereafter brought in the United States courts to recover or affect the same should be stayed, but not necessarily abated. See Weaver v. Field (C. C.) 16 Fed. 22; Gates v. Bucki, 53 Fed. 961, 4 C. C. A. 116. The pendency of a suit in the state court is not necessarily a bar to a suit in the United States court between the same parties involving the same issues. Hyde v. Stone, 20 How. 173, 15 L. Ed. 874; Stanton v. Embey, 93 U. S. 548, 23 L. Ed. 983; Insurance Co. v. Brune's Assignee, 96 U. S. 588, 24 L. Ed. 737; Short v. Hepburn, 75 Fed. 113, 21 C. C. A. 252.

In Gordon v. Gilfoil, 99 U. S. 168–178, 25 L. Ed. 383, Mr. Justice Bradley, for the Supreme Court, said:

"It has been frequently held that the pendency of a suit in the state court is no ground even for a plea in abatement to a suit upon the same matter in the federal court."

For the converse rule, see International & G. N. R. R. Co. v. Barton (Tex. Civ. App.) 57 S. W. 292, containing an extended citation of adjudged cases basing the rule on the different sovereignties from which the courts derive their powers.

Under the pleadings and proof made in this case, there is no reasonable ground to contend that the lands in controversy herein are in any wise in the exclusive possession of the state court, nor can it be pretended that the proceedings herein will in any wise clash with any regular proceedings had in the state court. There was no error in overruling the defendants' plea in abatement.

Having disposed of the questions affecting the jurisdiction of the court, we pass to the merits of the case. Under the evidence, we find that the relations existing between the defendant and Kaye, Ferrell, and Oxsheer were such that Kaye should be treated as a subagent of the defendant, and that the defendant and Ferrell are to be charged with notice of all the recitals relating to the lease and option contained in the contracts between Edwards county and Kaye in relation to the sale of the property. In fact, the recitals in the deed of Edwards county to Ferrell and in the deed of Ferrell to defendant are such that the defendant was by his title papers charged with full notice of the rights and claims of De Vitt & Flato.

The appellants' fourteenth assignment of error is as follows:

"Fourteenth. The decree of the Circuit Court, if based on any preference right or vested interest claimed by complainant as arising out of the alleged option contained in lease from the county judge to De Vitt & Flato, was erroneous for the reason: (a) The county judge was without authority from the commissioners' court to grant the option. (b) There was no ratification of said grant by the commissioners' court, or no sufficient ratification thereof to make it binding on Edwards county. (c) The alleged option was void for uncertainty. (d) The alleged option was not performed in accordance with its terms. (e) The alleged option was abandoned and rescinded by new contract between De Vitt & Flato and the commissioners' court in order of date February 12, 1902. (f) Complainant's claim of title is not under the option and was not acquired in accordance with the terms of the option, but under contract with the commissioners' court of date November 14, 1903."

(a)   The judge of the county court testified that there was an order of the commissioners' court of Edwards county authorizing the county judge to make the lease contract with the preference right to buy, but through some oversight this order was not entered on the minutes of the court, and there is no evidence to the contrary.   The failure to enter the order upon the minutes did not, in our opinion, affect the validity of the acts thereunder.   See Waggoner v. Wise Co. (Tex. Civ. App.) 43 S. W. 836.

(b)   The county commissioners recognized the lease and received rentals thereunder, and specifically ratified the same in the very first contract made with Kaye, under whom appellant claims title.   See American Waterworks Co. v. Farmers' Loan & Trust Co. 73 Fed. 956-964, 20 C. C. A. 133; Corzine v. Williams, 85 Tex. 506, 22 S. W. 399; Boydston v. Rockwall Co., 86 Tex. 234, 24 S. W. 272.

(c)   The option given to De Vitt & Flato is not void for uncertainty. Willard v. Tayloe, 8 Wall. 564, 19 L. Ed. 501; Hayes v. O'Brien (Ill.) 37 N. E. 65-77; Hitchcock v. Page, 14 Cal. 331-444; Marske v. Willard, 169 Ill. 277, 48 N. E. 290.

Hayes v. O'Brien, supra, was a suit for the specific performance of a contract of lease, in which an option was granted and the price was to be determined by subsequent offers to buy.   The court held that:

"Where no price is fixed in a lease contract, a provision is valid which gives the lessee a preference right to buy at a price offered by another."

In Marske v. Willard, supra, it was held:

"A contract giving one party the privilege of purchasing lands upon certain conditions is not void for want of mutuality, on the ground that though the seller is bound upon those conditions the other party is not bound to purchase unless he desires."

"A written contract giving one party the first opportunity to purchase land, 'provided he will pay as much as any other person,' is not invalid as being partly in writing and partly in parol, on the ground that the written contract does not specify the price to be paid or the terms and time of payment."

(d, e, f,) There is no evidence of any intention at any time on the part of De Vitt & Flato to abandon their option nor of any act of abandonment, nor is there shown any intention on the part of Edwards county to rescind the same; on the contrary, in the contracts with Kaye March 19, 1899, and May 8, 1899, and in the deed to Ferrell May 17, 1899, as well as in subsequent contracts with De Vitt & Flato, the original contract containing the option agreement is fully recognized as an existing obligation.   That the terms of sale were somewhat changed in the final contracts between the county and De Vitt & Flato on February 13, 1902, and November 14, 1903, seems to be immaterial.   If the obligations of the county to convey to De Vitt & Flato existed, the modification of terms by special agreement is of no interest to parties whose rights, if any, had already attached.

The appellant further contends that the option to purchase granted De Vitt & Flato by the commissioners of Edwards county was void, because the commissioners were without authority in law to execute such contract, and the same was contrary to public policy.   In Falls County v. De Laney, 73 Tex. 464, 11 S. W. 492, the Supreme Court

of the state holds that the commissioners' courts have the authority to lease the county school lands; and, in Waggoner v. Wise County, supra, it was held that the county commissioners' courts are general trustees for selling or otherwise disposing of the county school lands, upon such contracts, terms, and conditions as they may deem proper to adopt or provide.

We are cited to no prohibition in any Texas laws against giving to a lessee the preference right to buy. On the contrary, we find that it has long been the public policy of the state of Texas to encourage the settlement and development of the public free school lands by suitable provisions giving the lessee the preference right to buy. See article 4218w, Rev. St. Tex. 1895; Gen. Laws Tex. 1901, p. 292, c. 125. We notice that, prior to the time the lessees were given the preference right to purchase, they were given the preference right to re-lease. Gen. Laws Tex. 1887, p. 87, c. 99, § 14; Gen. Laws 1889, p. 50, c. 56. It is plain that a lessee having the legal right to re-lease or to buy is induced to make fences and buildings, dig wells, plant trees, and make other improvements—all inuring to the interest of the owner and the public. The object of these laws being to bring about the sale, development, and general improvement of the public lands belonging to the state, we see no reason why the same policy should not prevail with regard to the public lands awarded to counties for school purposes. We therefore conclude that the option granted De Vitt & Flato of the right to purchase at the expiration of their lease was fully within the authority of the commissioners' court of Edwards county, and the option as granted was not void as contrary to public policy.

The appellee contends with great force that the conveyance by the commissioners' court of Edwards county to R. S. Ferrell of its public school lands is null and void, and that the appellant Slaughter has no rights thereunder. The commissioners' court of Edwards county on May 8, 1899, executed an agreement with W. E. Kaye whereby Kaye, as the agent of Edwards county, was to sell the lands in controversy at the net rate of 85 cents per acre under certain conditions of sale and within a certain time, and therein it was especially agreed and understood that the said Kaye was to have as his compensation and commission any sum realized over and above the price of 85 cents per acre. To secure the performance of the said contract, said Kaye deposited the sum of $1,000 as evidence of good faith and to guaranty that he would sell and complete the sale of said lands on or before the 1st day of August, 1899, and in the contract it was provided that, if said Kaye refused or failed to make said contemplated sale on or before the said date, the said $1,000 deposited should be forfeited. The conveyance to Ferrell on May 17, 1899, was under and in pursuance of this contract, and the record shows that Kaye retained for himself for his services from the price paid by Ferrell the sum of $2,656.80, the difference between the amount at 85 cents per acre stipulated in the Kaye contract, and the amount paid by Ferrell.

The Supreme Court of the state has repeatedly held that the commissioners' courts were without authority to sell or convey the public school lands except for money, the gross proceeds of which were to

go to the public school fund of the county. Dallas County v. Club Land & Cattle Co., 66 S. W. 296; Tomlinson v. Hopkins, 57 Tex. 574; Cassin v. La Salle Co. (Tex. Civ. App.) 21 S. W. 124; Pulliam v. Runnels Co., 79 Tex. 369, 15 S. W. 277. Upon these authorities it would seem to be clear that, if the contract with Kaye was one giving him commissions as agent to be paid out of the price of the lands, the contract was void. On the other hand, if the contract with Kaye was practically and substantially a conditional sale to Kaye of the school lands at 85 cents per acre, the full amount of which was to be paid over to the county, then the contract cannot be said to be void by reason of the above cited authorities. If the contract with Kaye was void, then it would seem to be immaterial whether Slaughter was or not an innocent purchaser. See Sampeyreac v. United States, 7 Pet. 241, 8 L. Ed. 665; Bryan v. Crump, 55 Tex. 13; League v. Rogan, 59 Tex. 430.

From the view we have taken of the case above we do not feel called upon to pass further upon this issue. There are other assignments of error raising minor issues not necessary to consider, as their decision would not materially affect the conclusion we have reached; which is, that under all the facts and circumstances of the case, and for the reasons herein given, the decree of the Circuit Court was substantially correct, and should be affirmed. And it is so ordered.