ACCEPTED
12-15-00105-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
12/21/2015 11:41:12 AM
Pam Estes
CLERK

*Oral Argument Requested*

## No. 12-15-00105-CV

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS

12/21/2015 11:41:12 AM

PAM ESTES
Clerk

## In the Twelfth Court of Appeals
## Tyler, Texas

### CONSOLIDATED PROPERTY INTERESTS, LLC
*Appellant*

**v.**

### JERRY PAYNE AND PENNY PAYNE
*Appellees*

*Appealed from the 273rd Judicial District Court*
*Sabine County, Texas*

### APPELLANT'S REPLY BRIEF

Brent L. Watkins
Texas Bar No.24033312
SKELTON SLUSHER
1616 S. Chestnut
Lufkin, Texas75902
Telephone:  903-632-2300
Facsimile:   903-632-6545
bwatkins@skeltonslusher.com

Greg Smith
Texas Bar No. 18600600
Nolan Smith
Texas Bar No. 24075632
RAMEY & FLOCK, P.C.
100 E. Ferguson, Suite 500
Tyler, Texas 75702
Telephone:  903-597-3301
Facsimile:   903-597-2413
gsmith@rameyflock.com
nolans@rameyflock.com

**ATTORNEYS FOR APPELLANT**

# CONTENTS

Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

The Reply Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  Consolidated, not Penny, correctly interprets the 1931 deed . . . . . . . 2

II.  Although Penny concedes that she cannot rebut the community
property presumption, she nonetheless speculates about parties'
irrelevant *subjective* intentions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

III.  This Court should reverse and remand the attorney's fee issue . . . . . 6

Conclusion and Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Certificate of Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

# AUTHORITIES

**CASES:**

*Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445 (Tex. 2015) . . . . . . . . . . . . . 6

*Pearson v. Fillingim*, 332 S.W.3d 361 (Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . 5

*Richardson v. Hart*, 185 S.W.3d 563 (Tex. 1945) . . . . . . . . . . . . . . . . . . . . . . 4

*Williams v. Hardie*, 22 S.W. 399 (Tex. 1893) . . . . . . . . . . . . . . . . . . . . . . . . . 2

**RULES, STATUTES AND OTHER AUTHORITIES:**

William B. Burford, 6 West's Texas Forms,
Minerals, Oil and Gas § 1:2 (4th ed.) . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

**TO THE HONORABLE COURT OF APPEALS:**

Penny has all but given up. After years of litigation ginning up legal fees, Penny finally concedes that her primary argument – a claim that the subject property had been J. O. Payne's separate property – never had any support. *See* Appellee's Br. at 9. Consolidated thus is entitled to the declaratory judgment it seeks, stating that the property was bought in 1907 as community property and, thus, half of that property was inherited by Frances Payne and her brother, James Jr., upon their mother Pearl's intestate death in 1909.

Penny may not explicitly concede her alternative argument, about the 1931 mineral deed into Frances Payne and her brother. But Penny certainly offers the Court no reason to accept it. She does not cite any case law that would even faintly support her position. And she utterly ignores Consolidated's contrary deed interpretation and on-point authorities. Penny instead presents a hornbook law discussion on recitals, originating in century-old cases and copied verbatim from her summary-judgment response. *Cf.* CR 89-90 with Appellee's Br. at 14-16. But the 1931 deed contains no such recital. Penny's so-called "recital" actually is an operative clause (*i.e.*, a standard lease-termination clause). Thus, as a matter of law, Penny's sole remaining theory is utterly no basis for denying Consolidated's mineral-interest ownership.

The decision below must be reversed.

**The Reply Argument**

## I. Consolidated, not Penny, correctly interprets the 1931 deed.

As we have argued (and Penny ignores), Penny's interpretation of the 1931 mineral deed is in direct conflict with any proper deed construction. Among other things, it (a) renders the deed's granting clause surplusage, (b) fails to harmonize the deed overall, (c) ignores the cannons of deed construction, including the cannon that a deed should always be interpreted, if possible, so that it passes an interest, and (d) gives a cold shoulder to indisputable proof respecting how deeds were drafted and interpreted as of 1931. *See* Appellant's Br. at 31-34. Penny contends that the 1931 deed's grantees (Frances Payne and her brother), through a supposed recital, effectively quitclaimed their inherited half mineral interest so that they could be conveyed the other, identical half mineral interest in the same instrument. Not only does that seem like an odd thing to do, but is not a viable position here because – as a matter of law – the 1931 mineral deed contains no such recital.

As Penny's own, ancient authorities admit, recitals by definition are statements of existing factual context. *See, e.g., Williams v. Hardie*, 22 S.W. 399, 401 (Tex. 1893); *see also* William B. Burford, 6 West's Texas Forms, Minerals, Oil and Gas §1:2 (4th ed.) ("Such *facts* may include . . ."). To be effective, they must

not only be clear and "certain in . . . terms," *Hardie*, 22 S.W. at 401, but their nature as recitals should be denoted by some objective means within the instrument's four corners. *E.g.*, Burford, §1:2 ("Where unusual circumstances exist, it is wise to recite them following the caption of the instrument and prior to the beginning of the instrument itself."). Back in 1931 (and largely still today), this was accomplished by both words and positioning within the document:

(1) Being statements about factual context, recitals invariably show up *at or near the beginning of the document*, where they lay down context for the operative terms to follow. *Id.* To withhold recitals until later – as Penny argues about the 1931 deed – would frustrate this primary purpose. It would be like an appellate brief writer sandbagging a brief's "Background" discussion until the document's conclusion. Not even the most foolish brief writer would do that. Nor would any reasonable draftsman of deeds place prefatory recitals *after* the operative provisions they were meant to set up.

(2) Any intent to state a recital generally is denoted by one or more clear hallmarks or verbal clues – such as a heading called "Recitals" or a standard introductory term (*e.g.,* the capitalized word "WHEREAS"). *See* Burford, §1:2 (discussing both "the 'Whereas' form" and "the 'Recital' form").

(3) Any true recital would generally have the singular function of setting out a commonly held understanding of existing fact. It would not act as both a statement of fact and an operative grant of rights.

The lengthy clause that Penny calls a recital doesn't conform to any of these basic rules. For instance, Penny's so-called recital – the deed's "lease-termination" clause – is no mere factual statement, but clearly provides how the parties objectively intended to divide the existing and future lease rights *associated with the mineral interests being conveyed.* To this end, the clause (1) stated a present *agreement* (not a recitation of fact) that the deed was "subject to the terms of" the existing lease, (2) spelled out the fraction of royalty and rentals under that lease that are being conveyed, and (3) further spelled out the interest being conveyed in respect of future leases. As we have explained (and Penny ignores), this clause is verbatim in the form of a standard lease-termination clause. *See, e.g., Richardson v. Hart*, 185 S.W.3d 563, 563-65 (Tex. 1945). The clause also occupies the exact position within the deed where a lease-termination clause is normally located (and where a recital would never be found) – *following* the unambiguous grant of a half mineral interest. *Id.* at 563, 565. This ordering of the deed's terms objectively shows that the parties intended the deed to transfer the specified half interest from Gertrude to Frances and her brother independent of what inherited interest Frances and her brother did or didn't own going into the deal.

4

What is more, the provision never once uses the term "recital" or "whereas," or any other word that might denote a mere stipulation of pre-existing fact. In short, Penny's "recital" argument is frivolous.

## II. Although Penny concedes that she cannot rebut the community property presumption, she nonetheless speculates about parties' irrelevant *subjective* intentions.

Even though she concedes that the subject property was not J. O. Payne's separate property, Appellee's Br. at 9, Penny conjectures, improperly, about what subsequent parties in the chain of mineral title may subjectively have assumed about Frances's and her brother's 1909 inheritance.[1] Why do this? It makes no sense considering Penny's concession that the inheritance included a community-property half.[2] In light of her concession, Penny's discussion of

---

[1] *See, e.g.*, Appellee's Brief at 10 ("it is clear to the writer that the January 12, 1916 deed . . . resulted from [J. O. Payne's] desire to make his wife an owner . . . while retaining ownership of the other one-half"); ("the reason James, Jr. and Frances leased one-fourth interest each is that they (and W. A. Bridges) thought that was all they owned"); *Id.* at 12 ("these 1938 leases . . . clearly show that they were only claiming one-fourth of the minerals each"); *Id.* at 13 ("It is certainly logical that J. O. Payne . . . would not intend that the two children . . . by his prior marriage . . . would end up with all of the minerals under almost 500 acres of land").

[2] Even Penny's statement of facts makes no sense given her inevitable concession of the property's community-property character. The statement of facts begins curiously, with a discussion about what private title examiners generally do when the chain of title includes a conveyance for which the deed instrument doesn't say whether the property was bought with community or separate property. That testimony is irrelevant now, for two reasons. First, in a lawsuit addressing the property's characterization, the property will conclusively be deemed to have been acquired as community property unless the advocate of a separate-property theory

5

how the legal predecessors of the parties treated the property over the past 100 plus years is irrelevant. *Smith v. Buss*, 144 S.W.2d 529, 532 (Tex. 1940) (community-property character is fixed at the time of acquisition by the facts at the time of acquisition).

## III.   This Court should reverse and remand the attorney's fee issue.

As with the other issues on appeal, Penny has not offered any substantive response to Consolidated's position regarding attorney's fees. In its brief, Consolidated argued that should this Court reverse the trial court's judgment, it should render judgment that Consolidated is entitled to attorney's fees and then remand the issue of the amount of attorney's fees per *Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 455 (Tex. 2015) (upon reversal of declaratory judgment action, court of appeals may reverse attorney's fee award). In response, Penny doesn't cite the record or any case law, but rather merely states that only a trial court may award attorney's fees and decide the amount of those fees in a declaratory judgment case. Consolidated stands by its position and its interpretation of *Kachina Pipeline*.

---

traces the purchase-money funds to separate property. *Pearson v. Fillingim*, 332 S.W.3d 361, 363 (Tex. 2011). Penny concedes she has not done this and thus she concedes the property was bought in 1907 as community property – regardless what a title examiner might or might not infer in an out-of-court examination of the cold record documents.

## Conclusion and Prayer

Penny now has conceded what had been her primary argument. She basically ignores the central arguments of Consolidated's brief. And what argument she does make – attempting to characterize an operative lease-termination clause as a mere recital – falls flat. As stated in Consolidated's previous prayer, the decision below should be reversed, Consolidated's request for a declaratory judgment should be granted (as should Consolidated's request for declaratory-judgment attorney's fees), and Penny's cross- and counter-claims should be dismissed, with costs awarded to Consolidated.

Respectfully submitted,

＿＿/s/ Greg Smith＿＿＿＿＿

Greg Smith
State Bar No. 18600600
Nolan Smith
Texas Bar No. 24075632
RAMEY & FLOCK, P.C.
100 East Ferguson, Suite 500
Tyler, TX  75702
Telephone: (903) 597-3301
Facsimile:   (903) 597-2413
gsmith@rameyflock.com
nolans@rameyflock.com

Brent L. Watkins
SKELTON SLUSHER
1616 S. Chestnut
Lufkin, TX  75902
Telephone: (936) 632-2300
Facsimile:   (936) 632-6545
bwatkins@skeltonslusher.com

**COUNSEL FOR APPELLANT**

8

## Certificate of Service

This brief was served electronically and via email, in accordance with the applicable Texas Rules of Civil Procedure, on this the 21st day of December, 2015, on the following:

**Via email katiecmorgan@yahoo.com**
John H. Seale
Attorney at Law
P. O. Box 480
Jasper, TX  75951

   /s/ Greg Smith     
Greg Smith

## Certificate of Compliance

1.    This brief complies with the type-volume limitation of TEX. R. APP. P. 9.4 because it contains 1592 words, excluding the parts of the brief exempted by TEX. R. APP. P. 9.4(i)(2)(B).

2.    This brief complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in the proportionally spaced typeface using Word in 14 point Garamond font.

Dated: December 21, 2015.

 /s/ Greg Smith
GREG SMITH